FILED
United States Court of Appeals
Tenth Circuit

September 18, 2012

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee/Cross-Appellant,

v.

COREY CORNELIUS, a/k/a C.C.,

      Defendant-Appellant/Cross-
      Appellee.

Nos. 10-3125 and 10-3142

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 06:07-CR-10142-JTM-10)**

---

Carl F. A. Maughan of Maughan & Maughan LC, Wichita, Kansas, for Defendant-Appellant/Cross-Appellee.

James A. Brown, Assistant United States Attorney (Barry R. Grissom, United States Attorney, with him on the brief), Topeka, Kansas, for Plaintiff-Appellee/Cross-Appellant.

---

Before **LUCERO, SEYMOUR,** and **EBEL,** Circuit Judges.

---

**EBEL**, Circuit Judge.

---

Defendant-appellant Corey Cornelius was charged with four counts of federal racketeering- and drug-related offenses in 2008 in the District of Kansas along with nineteen codefendants in a thirty-count indictment. A jury convicted Cornelius in 2009 of one count of conspiracy to commit a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), one count of conspiracy to distribute crack cocaine, and one count of conspiracy to distribute marijuana. The jury could not reach a verdict on the fourth count against Cornelius, charging racketeering under RICO. The district court sentenced Cornelius to 210 months' imprisonment in 2010. This appeal by Cornelius and cross-appeal by the Government followed.

On appeal, Cornelius argues that (1) the evidence at trial was insufficient to support a conviction on any of the counts under which he was convicted; (2) the district court erred by instructing the jury that it did not need to find that an "enterprise" actually existed in order to convict on the offense of conspiracy to commit a RICO violation; (3) the district court erred by giving the jury an Allen instruction[1] after the jury advised the court that it was deadlocked on certain counts; (4) the district court erred by refusing to

---

[1] See Allen v. United States, 164 U.S. 492 (1896). An "Allen instruction" or "Allen charge" is "a supplemental instruction given to a divided jury to encourage it to agree on a verdict." United States v. LaVallee, 439 F.3d 670, 689 (10th Cir. 2006) (quotation marks, citation omitted). "Generally, such an instruction urges deadlocked jurors to review and reconsider the evidence in the light of the views expressed by other jurors so as to avoid a mistrial." Id. (internal quotation marks, citation omitted). When an Allen instruction "imposes such pressure on the jury such that the accuracy and integrity of their verdict becomes uncertain, it violates a defendant's right to due process and Sixth Amendment rights to an impartial jury trial and to a unanimous verdict." Id. (internal quotation marks, citation omitted).

2

instruct the jury on the affirmative defense of duress; (5) Cornelius was denied his right to trial by an impartial jury, in light of an allegedly bias-indicating letter that a juror handed to the prosecution after trial; and (6) Cornelius's sentence was unconstitutional, contrary to the Fair Sentencing Act of 2010, and based upon an improperly considered prior conviction. Meanwhile, the Government cross-appeals with regard to Cornelius's sentence, arguing that the district court erred by failing to impose the statutorily applicable twenty-year mandatory minimum term of imprisonment required for his crack-cocaine conviction.

Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we reject Cornelius's arguments on appeal and AFFIRM his conviction. Additionally, we agree with the Government that the district court erred by failing to impose the statutory mandatory minimum sentence in this case, and therefore VACATE Cornelius's sentence and REMAND for sentencing consistent with this opinion.

## I. BACKGROUND

*1. Pre-trial background*

The Crips are one of the more prominent street gangs in Wichita, Kansas. The Crips engage in drug distribution, violent crimes, and other illicit activity. Cornelius was a Crip member, and he had brothers and friends in the gang. The Wichita Crips are composed of several "sets," or sub-gang units, each of which may have their own sub-sets. Testimony at Cornelius's trial indicated that Cornelius was considered an "OG," or "original gangster," within one of the sets. An OG is a kind of leader with decision-

3

making power in the gang—"[s]omeone that is very respected, either the founder of the gang or someone that has earned respect within the gang and is high ranking." R. Vol. 4 at 961-62. Additional details about the Crips and Cornelius's criminal activities are set forth below as necessary in the Discussion.

Cornelius was arrested in May 2007 in relation to a 2006 armed robbery of a credit union in Wichita. Cornelius was charged in the District of Kansas with bank robbery and the use of a firearm during commission of a federal crime of violence, but those charges were dismissed in November 2007. In the meantime, in September 2007, Cornelius was charged in a twenty-five-count Superceding Indictment along with multiple codefendants.[2] After a series of subsequent indictments, Cornelius was charged along with nineteen codefendants in the case's thirty-count Fifth Superceding Indictment, filed in September 2008.

Cornelius faced charges under four counts in the Fifth Superceding Indictment. Under Count 1, Cornelius was charged with racketeering, in violation of 18 U.S.C. § 1962(c), in relation to the following alleged acts: robbery of a man in 1997; possession with intent to distribute marijuana in 2005; robbery of a credit union in 2006; and conspiracy to distribute cocaine and marijuana in 2007. Under Count 2, Cornelius was charged with conspiracy to commit a RICO violation, in violation of 18 U.S.C.

_____

[2] The original indictment, filed in July 2007, did not include Cornelius among the defendants it charged.

4

§ 1962(d), in relation to the previously identified activity. In Count 28, Cornelius was charged with conspiracy to distribute fifty grams or more of a mixture containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Finally, in Count 29, Cornelius was charged with conspiracy to distribute a mixture containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

2. *The trial*

Cornelius was tried by a jury in the District of Kansas along with five co-defendants who were also alleged Crips. The trial lasted roughly six weeks, from early March through mid-April 2009. On March 30, after all evidence had been presented and arguments had concluded, the jury began its deliberations. On April 9, the jury informed the judge that it was at an impasse, unable to reach a verdict on sixteen of thirty-four counts. In response, the court issued, over Cornelius's attorney's objection, an <u>Allen</u> instruction to the jury, instructing the members to reconsider their views and to deliberate further in attempt to reach an agreement if possible.

Also on April 9, the jury submitted a question to the court, asking: "Does the enterprise in Count 1 [i.e., racketeering under RICO] have to be established before we can come to a verdict on Count 2 [conspiracy to commit a RICO violation]?" R. Vol. 4 at 4438. The court responded in the negative, issuing the following responsive instruction to the jury:

5

No, your decision on Count 1 does not control your decision on Count 2. It is possible to find the defendant not guilty on Count 1, but guilty on Count 2, or guilty on Count 1 but not guilty on Count 2. Of course you may also find the defendant not guilty or guilty on both of those counts as well. [T]hese matters are addressed in Instructions 23 through 28 and 32 and 33. You must read this answer in conjunction with all of the instructions I have given you.

Id. at 4438-39, 4446. Cornelius's attorney had objected to that instruction by way of adopting the position of counsel for one of Cornelius's codefendants—counsel who had argued that the new instruction "lends undue emphasis to instructions that are already in the court's original instructions." Id. at 4443. Counsel had urged the court simply to refer the jurors back to the original jury instructions, although he conceded that he did not believe that the new instruction misstated the law or otherwise misled the jury. Notably, the original instructions likewise indicated that the jury did not need to find the existence of an enterprise under Count 1 in order to convict on Count 2. See R. Vol. 2 at 358-59 (Instr. 32: "Unlike the charge in Count 1, the government need not prove [under Count 2] . . . that the alleged enterprise was actually established . . . .").

On April 15, the jury returned a verdict on twenty-eight counts, unable to reach a verdict on the remaining six counts. With respect to the four charges against Cornelius, the jury failed to reach a verdict on Count 1 (racketeering under RICO), but it found Cornelius guilty under Count 2 (conspiracy to violate RICO), Count 28 (conspiracy to distribute crack cocaine), and Count 29 (conspiracy to distribute marijuana).

*3. Post-trial events*

6

After the trial had concluded, some of the jurors chose to meet with the attorneys in the jury room. There, the presiding juror handed an envelope with a typed letter to the prosecution. The letter thanked the prosecutors for their service; offered to discuss the trial, the jury's deliberations, and the applicable law with them, if that would be legal; and referenced the presiding juror's willingness to "help [the Government] rid this cancer in our society." R. Vol. 2 at 403.

On May 6, 2009, Cornelius filed a "Motion for judgment of acquittal or, in the alternative, a new trial," citing insufficient evidence to support a conviction, improper jury instructions, and jury partiality as justifications for relief. The district court denied that motion on July 15, 2009. Cornelius was sentenced on May 12, 2010, to 210 months' imprisonment for each of the three counts of conviction, to run concurrently.

Before trial, the Government had filed an information pursuant to 21 U.S.C. § 851, giving notice of a former felony drug conviction of Cornelius that would subject him to an enhanced sentence—namely, a twenty-year mandatory minimum prison term for Count 28, under 21 U.S.C. § 841(b)(1)(A). Cornelius objected to the consideration of that prior conviction, asserting that the conviction was the result of an unconstitutional search and therefore should be excluded from consideration as fruit of the poisonous tree under the exclusionary rule. The district court, over the Government's objection, did not sentence Cornelius to the twenty-year minimum. Rather, deeming itself to have some flexibility in the matter, and in light of its concern about crack/powder cocaine sentencing

7

disparities, the court sentenced Cornelius to only 210 months—twenty-five months less than the low end of the advisory range yielded by the Federal Sentencing Guidelines.

On May 21, 2010, Cornelius appealed to this Court. As outlined above, he argues that his conviction as well as his sentence were improper. Meanwhile, the Government cross-appealed, challenging only the district court's sentencing decision.

## II. DISCUSSION

### A. Sufficiency of the evidence

Cornelius argues that the evidence presented at trial was insufficient to support his convictions on Counts 2, 28, and 29. We conclude that the evidence was sufficient for each.

We review the record de novo in sufficiency-of-the-evidence challenges to criminal jury verdicts, asking if, "viewing the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Dobbs, 629 F.3d 1199, 1203 (10th Cir. 2011). We consider "both direct and circumstantial [evidence], together with the reasonable inferences to be drawn therefrom." United States v. Jameson, 478 F.3d 1204, 1208 (10th Cir. 2007). "We will reverse a conviction 'only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Dobbs, 629 F.3d at 1203 (citation omitted).

1. *Count 2: Conspiracy to commit a RICO violation*

Cornelius's sufficiency challenge to his conviction on Count 2 is peculiar insofar as he does not argue directly that there was insufficient factual proof to support a conviction. Rather, he relies upon an inference from the jury's failure to reach a verdict on Count 1—racketeering under RICO—which he claims is inconsistent with his conviction on Count 2—conspiracy to commit a RICO violation—such that either a directed acquittal or a new trial is warranted vis-à-vis Count 2. Cornelius first asserts that the RICO conspiracy charge in Count 2 as well as the substantive RICO charge in Count 1, requires a finding of, among other elements, the existence of an enterprise at the time of the offense.[3] He then argues that the jury's acquittal on Count 1 must have been based on a finding that no enterprise in fact existed. Cornelius concludes, therefore, that the evidence must have been insufficient as to Count 2, since conviction on that charge also required the jury to find the same element of the actual existence of a criminal enterprise that it found lacking under Count 1.

---

[3] The RICO statute provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

Subsection (d) of § 1962, in turn, declares it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

Cornelius's inconsistent-verdicts argument fails without even reaching the question of whether the existence of an enterprise is an essential element of a RICO conspiracy charge under 18 U.S.C. § 1962(d). It is a longstanding principle that "[c]onsistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment." Dunn v. United States, 284 U.S. 390, 393 (1932); see also id. at 394 ("That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters."); United States v. Swafford, 766 F.2d 426, 429-30 (10th Cir. 1985) (applying the rule in Dunn to an allegedly inconsistent conspiracy verdict). See generally 18 A.L.R.3d 259 § 30[a] ("As a general rule, the fact that contrary verdicts are returned as between a conspiracy count and a count charging a substantive offense presents no such inconsistency as requires reversal."). Hence, even if the jury were required to find the existence of an enterprise under both Counts 1 and 2, mere inconsistency between the guilty verdict on Count 2 and the non-verdict on Count 1 would not warrant reversal of the conviction.

Cornelius has not made any additional arguments on appeal with respect to his conviction on Count 2. Cornelius's enterprise argument fundamentally also fails, in addition to the reason discussed above, because the Government was not required to prove the actual existence of an enterprise under 18 U.S.C. § 1962(d)—a legal point we clarify today in United States v. Harris, No. 10-3173, -- F.3d -- (10th Cir. 2012). Reviewing the record de novo and making all reasonable inferences in favor of the

10

Government, see Jameson, 478 F.3d at 1208, we determine that the Government produced sufficient evidence from which a rational trier of fact could have found all the elements of the RICO conspiracy charged in Count 2 beyond a reasonable doubt, see Dobbs, 629 F.3d at 1203.

### 2. *Count 28: Conspiracy to distribute crack cocaine*

Cornelius argues that the jury could not reasonably have convicted him on Count 28 because the Government failed adequately to prove the interdependence element of conspiracy. "To obtain a conspiracy conviction, the government must prove: '(1) an agreement by two or more persons to violate the law; (2) knowledge of the objectives of the conspiracy; (3) knowing and voluntary involvement in the conspiracy; and (4) interdependence among co-conspirators.'" United States v. Foy, 641 F.3d 455, 465 (10th Cir. 2011). The interdependence prong is "a focal point" of this conspiracy analysis. United States v. Caldwell, 589 F.3d 1323, 1329 (10th Cir. 2009) (quotation marks, citation omitted). To that end, we ask whether the "coconspirators intend[ed] to act together for their shared mutual benefit within the scope of the conspiracy charged." Id. (internal quotation marks, citation omitted). The Government need not "prove 'the conspirators know the identities or details of each scheme or have connections with all other members of the conspiracy.'" Foy, 641 F.3d at 465 (citation omitted). "Circumstantial evidence alone is often sufficient" to demonstrate interdependence, and "a single act" can constitute sufficient proof. Caldwell, 589 F.3d at 1329.

11

Cornelius contends that his conviction on Count 28 rests upon "an impermissible stacking of inference upon inference" and improper "guilt by association" reasoning. Aplt. Br. at 26.  He claims that even if he did buy cocaine from, or sell cocaine to, other Crips, there is no evidence that any two of those occasions were connected, or that any common drug-supplying goal existed between them.  He also asserts that "other defendants could have continued with any effort to distribute cocaine even if [he] had not been involved."  Id. at 29.

However, the Government did put forth evidence from which a reasonable jury could infer interdependence.  It is true that the "existence of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy."  United States v. McIntyre, 836 F.2d 467, 471 (10th Cir. 1987).  However, the buyer-seller principle only shields mere end-user consumers like the defendant in McIntyre, who only shared three cocaine purchases with friends and did not resell the drugs.  See, e.g., id.  In contrast, as opposed to mere consumers, those who "intend to redistribute drugs for profit, thereby furthering the objective of the conspiracy," such as "street-level, mid-level, and other distributors," are not protected by the end-user defense.  United States v. Ivy, 83 F.3d 1266, 1286 (10th Cir. 1996).

In this case, there was evidence that Cornelius bought and sold drugs in an interdependent distribution scheme.  The evidence that Cornelius repeatedly sold cocaine to other drug distributors who in turn sold it to others is sufficient to support a reasonable inference that conspiratorial interdependence existed between Cornelius and other

12

distributors in a conspiracy.[4] See United States v. Wright, 506 F.3d 1293, 1299 (10th Cir. 2007) (determining that a "buyer-seller relationship [was] patently an interdependent one" where there was evidence that defendant sold drugs on a recurrent basis to another man, who in turn sold the drugs for profit); United States v. Small, 423 F.3d 1164, 1183 (10th Cir. 2005).

Further supporting that conclusion is evidence that Cornelius was an "OG"—a leader within the gang—as that status would tend to establish Cornelius as a "mid-level" dealer, which bolsters a finding of a conspiratorial relationship. See Ivy, 83 F.3d at 1285-86; Wright, 506 F.3d at 1299. Cornelius's status as an OG could also suggest that he "was privy to information regarding the [nature and objectives] of the criminal conspiracy," which supports an inference of interdependence. Small, 423 F.3d at 1183. Also to that end, testimony regarding Cornelius's attendance at gang meetings supports such an inference, see id. at 1183.

---

[4] See, e.g., R. Vol. 4 at 995, 1018-22 (testimony of Donta Davis, a fellow Crip, indicating that Davis knew Cornelius for a long time and had several marijuana and cocaine dealings with Cornelius; that Cornelius knew how to obtain drugs and would acquire them for Davis; that Davis would meet Cornelius at a "crack house," where other Crips hung around, to conduct the transactions; that the amounts of drugs Davis would buy from Cornelius at a time—multiple ounces of powder cocaine, to be cooked into crack, and multiple pounds of marijuana—were substantial; and that Davis would in turn sell the drugs to other people); id. at 1801, 1815-16 (testimony of Prentice Byrd, a Crip, indicating that he sold crack cocaine to Cornelius probably twice, never merely gifting drugs to, or sharing drugs with, Cornelius); id. at 2029, 2096-97 (testimony of James Jones, another Crip, indicating that Jones sold crack cocaine to Cornelius from February to September 2006, and that Cornelius had a spot from which Cornelius regularly sold drugs himself).

13

The jury did not need to find that the conspiracy could not have functioned without Cornelius; rather, it is sufficient that Cornelius was an operational link within it. See United States v. Evans, 970 F.2d 663, 670 (10th Cir. 1992). In this case, there was adequate evidence, including the testimony identified above, from which a rational jury could conclude that Cornelius was at least an operational link in the cocaine distribution conspiracy.[5]

In sum, viewing the evidence in the light most favorable to the Government, there was sufficient evidence to find Cornelius guilty under Count 28.

### 3. Count 29: Conspiracy to distribute marijuana

With respect to Count 29, Cornelius argues that there was insufficient evidence of the necessary respective conspiracy elements of agreement and interdependency. See Caldwell, 589 F.3d at 1329. He asserts that his conviction rested upon an improper guilt-by-association rationale, arguing that there was no proof of conspiracy but rather only

---

[5] Our holding in United States v. McIntyre is not to the contrary, as Cornelius suggests. In McIntyre, we reversed a conspiracy-to-distribute conviction on sufficiency-of-the-evidence grounds where the prosecution "failed to show any common goal or larger scheme beyond each single [drug] transaction" and, further, did not "contend that defendant knew of a broad conspiracy or that the relatively small amounts of cocaine he purchased should have alerted him to a conspiracy." 836 F.2d at 472. Also, the prosecution there had not put forth sufficient evidence to show "that if defendant had failed to possess and distribute drugs on any one of the named occasions, the failure would have had any effect on the success of the other transactions." Id. The present case is distinguishable because the Government did put forth evidence from which the jury could have concluded that Cornelius—an OG, who re-sold drugs in addition to buying them, unlike the mere end-use consumer in McIntyre—knew of a larger drug-distribution scheme and knew of a broad conspiracy, and that his drug transactions had an effect on the success of other transactions.

14

evidence of his status as a Crip and his intent to distribute marijuana, apart from any agreement with others.

Once again, however, the Government did produce evidence that supports a reasonable inference of a conspiracy. Fellow Crip Donta Davis testified, "I was buying and [Cornelius] knew the person to get [marijuana and cocaine] from, [Cornelius] would go get [it] for me." R. Vol. 4 at 1019; see also id. at 1020 (testimony that Davis would buy two to three pounds of marijuana at a time, at a price of $500-600 per pound, from Cornelius).[6] This kind of middleman buyer-seller relationship between two drug dealers, along with Cornelius's status as an OG (giving him an insider presence and heightened decisionmaking power in the gang), is sufficient to support an inference of both the agreement and interdependency elements of a conspiracy. See Wright, 506 F.3d at 1298-99.

We cannot say that no reasonable jury could have found Cornelius guilty under Count 29.

## B. Jury instruction on Count 2

Cornelius objects to the district court's charge to the jury—via both jury Instruction 32 and the court's response to the jury's subsequent related question, discussed above in the Background—that it need not find that an enterprise existed under Count 1 in order to convict under Count 2. Cornelius argues that this was a clearly

---

[6] See also supra n.4.

15

erroneous statement of Tenth Circuit law. We conclude that Cornelius's argument fails both under the invited error rule, because Cornelius waived his right to challenge the jury instruction on appeal by expressly endorsing it at trial; or alternatively, considering the question under our forfeiture standard of review, the instruction was not clearly erroneous.

Under the invited error doctrine, this Court will not engage in appellate review when a defendant has waived his right to challenge a jury instruction by affirmatively approving it at trial. "[A] party that has forfeited a right by failing to make a proper objection may obtain relief for plain error; but a party that has waived a right is not entitled to appellate relief." United States v. Cruz-Rodriguez, 570 F.3d 1179, 1183 (10th Cir. 2009) (internal quotation marks, citation omitted). "A waived claim or defense is one that a party has knowingly and intelligently relinquished; a forfeited plea is one that a party has merely failed to preserve." Wood v. Milyard, 132 S.Ct. 1826, 1832 n.4 (2012); see also United States v. Olano, 507 U.S. 725, 733 (1993); United States v. McGehee, 672 F.3d 860, 873 (10th Cir. 2012) ("Waiver is accomplished by intent, but forfeiture comes about through neglect." (quotation marks, citation, alterations omitted)). "Nonwaivable rights are rare," such that waiver is only disallowed when there exists a "need to protect a public interest beyond that of the defendant or because of concern that undue, and unprovable, pressure may have been brought to bear on the defendant." United States v. Teague, 443 F.3d 1310, 1316 (10th Cir. 2006).

16

We have found waiver, for instance, when a defendant proposed and agreed to certain conditions of supervised release, and later sought to challenge them. See id. at 1315-16. Similarly, the Seventh Circuit has held that an attorney's express approval of a jury instruction before its submission to the jury precluded appellate review of his client's subsequent claim that the instruction was faulty. See United States v. Griffin, 84 F.3d 912, 923 (7th Cir. 1996). In contrast, mere forfeiture occurs where, for example, a defendant simply indicates that he has no objection to a proposed jury instruction at the jury instruction conference. See Harris, No. 10-3173, -- F.3d at -- n.4.

In this case, as discussed above in the Background, Cornelius's attorney expressed concern about the answer the district court gave to the jury in response to its question about the relationship between Counts 1 and 2, by way of expressly adopting the position stated by counsel for one of Cornelius's codefendants. Cornelius's attorney effectively stated that the district court's instruction-clarifying charge to the jury—namely, that the jury's respective findings in Counts 1 and 2 were mutually independent—was confusing and misleading. He preferred that the judge respond to the jury's question simply by instructing the jury to reread the instructions they had already received, wherein the proper legal guidance was already present. However, when the judge explicitly asked defense counsel whether the response the judge was giving the jury contained a misstatement of the law or would in fact mislead the jury, defense counsel replied in the negative. Further, defense counsel expressly endorsed Instruction 32, which contained

17

the statement of law with which Cornelius now asserts error. Instruction 32 had advised that, for Count 2,

> [u]nlike the charge in Count 1, <u>the government need not prove . . . that the alleged enterprise was actually established</u> . . . . An offense is established if the government proves that, <u>if the conspiracy were completed . . . and the enterprise established</u>, that: 1) the defendant would be employed by or associated with the enterprise; and 2) that the enterprise affected interstate or foreign commerce.

R. Vol. 2 at 358-59 (emphases added). Thus, not only did Cornelius originally agree to this instruction, but later he implored the trial judge to instruct jurors to return to this now-challenged instruction if the jurors had any doubts about whether the existence of an enterprise needed to be established for conviction on conspiracy.

The invited error doctrine would preclude Cornelius from challenging the "proposition that [he] had urged the district court to adopt." <u>United States v. Deberry</u>, 430 F.3d 1294, 1302 (10th Cir. 2005); <u>see</u> <u>Griffin</u>, 84 F.3d at 923. If we determined that Cornelius's express endorsement of the original jury instruction amounted to waiver, we would not review the merits of this issue on appeal. However, in an unpublished opinion concerning one of Cornelius's co-defendants—namely, the codefendant whose position on this jury instruction it was that Cornelius's attorney adopted—we said that while defense counsel's actions "teeter on the edge, they ultimately fall on the side of neglect, rather than intent," and therefore amount to "a forfeiture, rather than an invited error." <u>United States v. Smith</u>, 454 F. App'x 686, 692 (10th Cir. 2012) (unpublished). Smith, of course, does not constitute binding precedent because it is an unpublished disposition.

18

But even if we were to agree with and adopt the analysis in <u>Smith</u> and considered the statements of Cornelius's counsel to constitute forfeiture rather than waiver, we would review for plain error.[7] <u>See</u> <u>id.</u> Under the plain-error standard, we would conclude that no error, let alone plain error, occurred here, because as we explain in <u>Harris</u>, the actual existence of enterprise is not a required element of 18 U.S.C. § 1962(d). <u>See</u> <u>Harris</u>, No. 10-3173, -- F.3d. at --.

Hence, whether we consider Cornelius's jury-instruction objection waived and refuse to consider its merits under the invited error doctrine, or whether we treat the objection as forfeited and review for plain error, Cornelius's argument on appeal fails.

## C. <u>Allen</u> instruction

Ten days after the jury began deliberating, it informed the district court that it was at an impasse on eighteen of the thirty-four counts. In response, the judge issued an <u>Allen</u> instruction (Jury Instruction 48), urging jurors to reconsider their views and to try to come to a consensus on the undecided counts. Six days after the <u>Allen</u> instruction, the jury returned a verdict on all but six counts. Cornelius claims that the <u>Allen</u> instruction to the jury was improperly coercive on the jury. He argues that the timing of the <u>Allen</u> instruction, coupled with the apparent effect of the instruction, violated his right to a fair,

---

[7] "To establish plain error, [the appellant] must demonstrate the district court (1) committed error, (2) the error was plain, and (3) the plain error affected his substantial rights. If these factors are met, we may exercise discretion to correct the error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." <u>United States v. Cordery</u>, 656 F.3d 1103, 1105 (10th Cir. 2011) (citation omitted).

impartial jury.  Reviewing the <u>Allen</u> charge for an abuse of discretion by the district court, <u>see</u> <u>United States v. Ailsworth</u>, 138 F.3d 843, 851 (10th Cir. 1998), we conclude that the instruction was proper.

A district court may issue an <u>Allen</u> instruction "urg[ing] deadlocked jurors to review and reconsider the evidence in the light of the views expressed by other jurors so as to avoid a mistrial," provided that the instruction does not "impose[] such pressure on the jury such that the accuracy and integrity of [the] verdict becomes uncertain." <u>LaVallee</u>, 439 F.3d at 689 (internal quotation marks, citations omitted).  In considering whether an <u>Allen</u> instruction was improperly coercive, we consider "(1) the language of the instruction, (2) whether the instruction is presented with other instructions, (3) the timing of the instruction, and (4) the length of the jury's subsequent deliberations."  <u>Id.</u> (quotation marks, citation omitted).  The "ultimate question" is whether the instruction was "<u>impermissibly</u> coercive in a way that undermined the integrity of the deliberation process."  <u>United States v. McElhiney</u>, 275 F.3d 928, 940 (10th Cir. 2001) (emphasis added).

In this case, the district court's <u>Allen</u> instruction included the following language:

> Members of the jury, I am going to ask that you return to the jury room and deliberate further. . . .  Sometimes, after further discussion, jurors are able to work out their differences and agree.
> . . .
> You are reminded that each defendant is presumed innocent, and that the government, and no defendant, has the burden of proof and it must prove each defendant guilty beyond a reasonable doubt.  Those of you who believe that the government has proved a defendant guilty beyond a reasonable doubt should stop and ask yourselves if the evidence is really

20

convincing enough, given that other members of the jury are not convinced. And those of you who believe that the government has not proved a defendant guilty beyond a reasonable doubt should stop and ask yourselves if the doubt . . . is a reasonable one . . . .  In short, <u>every individual juror should reconsider his or her views</u>.

As I told you before, it is your duty, as jurors, to consult with one another and deliberate with a view toward reaching an agreement, <u>if you can do so without violence to individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors</u>.  In the course of your deliberations do not hesitate to reexamine your own views and change your opinion if you are convinced it is erroneous.  <u>But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.</u>

<u>What I have just said is not meant to rush or pressure you into agreeing on a verdict.  Take as much time as you need to discuss things. There is no hurry.</u>

I will ask now that you retire once again and continue your deliberations with these additional comments in mind to be applied, of course, in conjunction with all of the instructions I have previously given you.

R. Vol. 2 at 377-78 (emphases added).

First, with regard to the language of the instruction in this case, see <u>LaVallee</u>, 439 F.3d at 689, the language emphasized above makes clear that the district court urged all jurors, not just those in favor of acquittal, to reconsider their views according to the proper standard of the law.  Moreover, the instruction did not undermine the deliberative process but rather stressed the importance of integrity in being an impartial, deliberate fact-finder.  Such language does not approach impermissible coercion.  <u>See, e.g.</u>, <u>McElhiney</u>, 275 F.3d at 934 (impermissible coercion where a judge said to a foreperson: "Well, frankly, I'd like to have you [continue to deliberate].  I'd be very happy to have a

21

verdict one way or the other.  [T]he time and attention and the danger of this case has been, you know, a problem. . . . [I]f you find that you're absolutely hopelessly deadlocked, why then I would have nothing else I can do except dismiss you with the thanks of the Court. . . .").

Second, with regard to other, prior jury instructions, the district court told the jury to apply the Allen instruction in conjunction with all of the instructions the court had previously given.  That was certainly proper.

Third, with regard to the timing of the instruction, "although it is a preferred rule of procedure that an Allen instruction be given the jury at the same time as other instructions, it is not a per se rule."  United States v. McKinney, 822 F.2d 946, 951 (10th Cir. 1987); see also United States v. Reed, 61 F.3d 803, 805 (10th Cir. 1995).  Indeed, "where the trial court administered a supplemental Allen instruction only after the jury informed the court that it was unable to reach a verdict"—as in this case, as opposed to issuing the instruction sua sponte in order to hasten the return of a verdict—this weighs against a determination of improper coercion.  See United States v. Butler, 904 F.2d 1482, 1488 (10th Cir. 1990).

Finally, with regard to the length of post-instruction deliberations, the jury did not return with further verdicts until after several days of continued deliberation.  Under the circumstances, this relatively long period of further deliberation tends to negate an inference of improper coercion.  See LaVallee, 439 F.3d at 690-91 (no improper coercion when the jury, in a trial with multiple defendants, returned several new verdicts within a

22

day of the <u>Allen</u> instruction); <u>Reed</u> 61 F.3d at 805 (no improper coercion where a previously deadlocked jury returned a verdict the same morning it was given an <u>Allen</u> instruction, albeit in a relatively simple trial).

In conclusion, the district court did not abuse its discretion in issuing the <u>Allen</u> instruction in the form and at the time that it did.

### D. Refusal to instruct on duress

Cornelius argues that he was entitled to a jury instruction on the affirmative defense of duress, reasoning that after he had become a Crip, he was forced by the gang, by the threat of violence, to commit illegal acts as the gang dictated. Cornelius included a duress instruction in his proposed jury instructions, but the district court declined to include it. We review the district court's decision not to instruct the jury on an affirmative defense for an abuse of discretion. <u>United States v. Turner</u>, 553 F.3d 1337, 1347 (10th Cir. 2009). To have been entitled to such an instruction, Cornelius must have produced or at least proffered evidence that, viewed in the light most favorable to Cornelius, demonstrated under a preponderance standard each element of the requested affirmative defense. <u>See</u> <u>United States v. Portillo-Vega</u>, 478 F.3d 1194, 1197-98 (10th Cir. 2007). We conclude that Cornelius failed to meet this burden.

To receive an instruction on duress, Cornelius needed to demonstrate the following elements: "(1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) no reasonable opportunity to

23

escape the threatened harm." Id.[8] In this case, Cornelius never identified sufficient evidence of the third required element. On appeal, Cornelius points to the fact that he had taken "specific action to distance himself from the Crips group by moving out of the neighborhood in which the Crips thrived," Aplt. Br. at 42 (citing R. Vol. 4 at 968), but that only detracts from his claim for a duress instruction: the fact that Cornelius had moved away from the more threatening territory and was taking steps to withdraw from the gang belies his claim that he could not escape the threatened harm. Thus, as Cornelius failed to establish each of the required elements of duress, we determine that the district court did not abuse its discretion in declining to instruct the jury on duress.[9]

Thus, the district court did not abuse its discretion by failing to give a duress instruction.

---

[8] At common law, necessity and duress were distinct but addressed the same basic affirmative defense that one was forced to do something: necessity was invoked when the coercive force was environmental, whereas duress was invoked when the force was human. See United States v. Bailey, 444 U.S. 394, 409-10 (1980). However, "[m]odern cases have tended to blur the distinction between duress and necessity," choosing instead to discard such labels "and to examine the policies underlying the traditional defenses." Id. at 410. While we have applied the rule stated above in the context of necessity, see, e.g., Vigil, 743 F.2d at 755, necessity and duress are "two sides of the same coin," being animated by similar policies and principles, United States v. Al-Rekabi, 454 F.3d 1113, 1123 n.8 (10th Cir. 2006); see also United States v. Butler, 485 F.3d 569, 572 n.1 (10th Cir. 2007) ("Courts have used the terms duress, necessity, and justification interchangeably."). Accordingly, for instance, we have previously cited precedent from the necessity context in stating the standard of appellate review for declining to give a duress defense. See Portillo-Vega, 478 F.3d at 1197 and n.4 (expressly minimizing the distinction between the two affirmative defenses, citing Bailey, 444 U.S. at 409-10).

[9] We note, additionally, that it is questionable whether Cornelius satisfied the first, immediacy prong of duress. Cornelius produced testimony that he had been moving away from the Crips' influence for some time with no examples of serious retaliation.

24

## E.  Juror partiality

Cornelius argues that either reversal of his conviction or a new trial is warranted due to jury partiality.  He claims that a letter given by the presiding juror to the prosecution in the jury room after the trial had concluded demonstrated that the juror had "discarded his role as an impartial juror."  Aplt. Br. at 34.  In the letter, the juror told prosecutors that he would be "willing to sit down and discuss . . . anything else that may help you in an effort to rid this cancer in our society."  R. Vol. 2 at 403.  Cornelius deduces (probably accurately) that the letter must have been composed by the juror while deliberations were still ongoing, as it does not appear that the juror had the opportunity to type the letter after the jury's submission of its verdict.  Cornelius argues that the "cancer" statement evinces an anti-gang bias of the juror, the existence of which deprived Cornelius of his "constitutional right to be presumed innocent and to be tried by an impartial jury."  Aplt. Br. at 34.  We determine, however, that the letter is not evidence that was discoverable under the applicable evidentiary rule or legally cognizable as a basis of unconstitutional juror partiality.

We review the denial of a motion for new trial pursuant to Fed. R. Crim. P. 33 for an abuse of discretion.  United States v. Easter, 981 F.2d 1549, 1552 (10th Cir. 1992).  Where juror partiality or juror misconduct has been alleged, a district court should consider whether or not to hold an evidentiary hearing to investigate the matter and determine whether a new trial is warranted.  See Smith v. Phillips, 455 U.S. 209, 215 (1982).  Taking the district court's refusal to set aside Cornelius's conviction as implicitly

25

declining to conduct such an evidentiary hearing, we review that denial for an abuse of discretion, too. See Easter, 981 F.2d at 1552.

Generally speaking, "district courts should be reluctant 'to haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences.'" United States v. Vitale, 459 F.3d 190, 197 (2d Cir. 2006) (citation omitted); see also Easter, 981 F.2d at 1552 (holding that evidentiary hearings are not warranted "when only 'thin allegations of jury misconduct' are present" (citation omitted)). An evidentiary hearing "is not mandated every time there is an allegation of jury misconduct or bias. Rather, in determining whether a hearing must be held, the court must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source." United States v. Smith, 424 F.3d 992, 1012 (9th Cir. 2005) (quotation marks, citation omitted). For instance, a hearing is not necessary "where the court knows the exact scope and nature of the bias allegation." Id. (internal quotation marks, citation omitted). Among other things, the district court should consider what information it might gain from an evidentiary hearing in light of Fed. R. of Evid. 606(b). See Tanner v. United States, 483 U.S. 107, 127-28 (1987) (holding that refusal to hold an evidentiary hearing, given the restrictions of Rule 606(b), does not violate a defendant's Sixth Amendment right to trial by an impartial jury). The version of Rule 606(b) in existence when the district court ruled in this case stated, in relevant part:

> a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or

26

dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. . . .

Fed. R. 606(b) (2009).[10] With those parameters in mind, if it appears to the district court that an evidentiary hearing would "likely not have produced any valuable information," it is proper to forego such a hearing.[11] Smith, 424 F.3d at 1012. The general rule, then, is that courts may properly inquire only into external influences on the jury, such as if a juror improperly read a newspaper in the jury room or was involved in bribery. See Tanner, 483 U.S. at 118-25 (citing the common law practice, policy considerations, and legislative history of Fed. R. Evid. 606(b)). In contrast, a hearing is inappropriate when the alleged influence has to do with a juror's internal state of mind. See id.; see also Smith, 424 F.3d at 1013 (a juror's "infatuation" with a witness was an internal influence).

---

[10] The current version of Fed. R. Evid. 606(b) is substantially the same in terms of substance. The main difference has to do merely with formatting: the current Rule 606(b) is divided into two subsections, (1) and (2), that correspond, respectively, to the prohibitive part of the Rule and the subsequently identified exceptions to the prohibition.

[11] To illustrate, in Smith, the Ninth Circuit reviewed a district court's refusal to conduct an evidentiary hearing when a juror had sent a flirtatious post-trial letter to the prosecution's summary witness, a law enforcement agent. See 424 F.3d at 1011-13. The appellate court held that, "even if the juror's thought process was biased with his alleged 'infatuation' with [the prosecution's summary witness], the court was not free to hear evidence in this regard" in light of Fed. R. Evid. 606(b). Id. at 1013. The Ninth Circuit further concluded that the letter did not indicate that the juror had received "extraneous prejudicial information" from the witness during trial, nor that any "outside influence . . . was improperly brought to bear," referencing the exceptions within Rule 606(b). Id. (quotation marks, citation, alteration omitted).

27

In this case, there is no allegation of any improper contact between the foreperson and the prosecution (or anyone else) before the jury's verdict was rendered. Assuming that the foreperson composed the letter in question before the jury delivered its verdict, the letter shows at most that the juror had reached a conclusion that gang-related activity is a "cancer" to our society. However, such a conclusion is within the realm of a "juror's mental processes," Fed. R. Evid. 606(b); and as discussed above, that is something internal into which the court may not inquire at an evidentiary hearing regarding juror misconduct. It may be that the juror reached this conclusion as a result of considering the evidence in this case. In any event, contrary to Cornelius's assertion, an internal bias within a juror does not transform into an external influence merely because that juror deliberates with his fellow jurors.[12] See Fed. R. Evid 606(b); cf. Tanner, 483 U.S. at 120-21. This kind of internal juror partiality is inevitable to some extent among any group of individuals, and minimizing it is the province of pretrial voir dire; it is not grounds to require an investigatory hearing or a new trial.

---

[12] Cornelius's citation to United States v. Vasquez-Ruiz, 502 F.3d 700 (7th Cir. 2007), for the proposition that "the introduction of external influences into the jury deliberations is presumptively prejudicial and . . . shifts [the burden] to the prosecution to rebut the presumption," Aplt. Br. at 37, is inapposite. Vasquez-Ruiz held that "[I]f [a mysterious and problematic] note [on a juror's notepad] was written by an outsider [i.e., a non-juror], then . . . such influence is presumptively prejudicial." 502 F.3d at 705 (emphases added). The present case is distinguishable because the alleged influence in question is the mindset and deliberations of a juror himself, not the influence of some non-juror.

28

In conclusion, the district court knew the scope and nature of the alleged misconduct, and stood to gain no further, useful information from an evidentiary hearing. See Smith, 424 F.3d at 1012. The court thus did not abuse its discretion in declining to hold such a hearing. Similarly, the district court did not abuse its discretion in denying Cornelius's motion for a new trial, as there was no improper juror bias or misconduct demonstrated in this case.

## F. Sentencing

As a general matter, this Court generally reviews sentencing decisions under an abuse of discretion standard, asking if the sentence imposed was both procedurally and substantively reasonable. See Gall v. United States, 552 U.S. 38, 46 (2007); United States v. Friedman, 554 F.3d 1301, 1307 (10th Cir. 2009). However, a district court has no discretion to depart from a statutorily mandated minimum sentence under 21 U.S.C. § 841, since statutory minima were not rendered merely advisory by United States v. Booker, 543 U.S. 220 (2005). See United States v. Payton, 405 F.3d 1168, 1173 (10th Cir. 2005).[13]

---

[13] The only exceptions under which a district court may sentence a defendant below an otherwise applicable statutory mandatory minimum under 21 U.S.C. § 841 are the so-called "safety valve" provision of 18 U.S.C. § 3553(f), and the "substantial assistance" provision of 18 U.S.C. § 3553(f). See United States v. Altamirano-Quintero, 511 F.3d 1087, 1089-90 (10th Cir. 2007). Neither of those exceptions, however, applies to this case (nor has Cornelius argued that they do).

*1. The district court's lack of discretion to disregard the applicable statutory twenty-year mandatory minimum sentence*

The Government argues that the district court erred by failing to impose the minimum sentence of twenty years' imprisonment mandated for Cornelius's conviction on Count 28, in light of his prior drug felony conviction. We agree.

The version of 21 U.S.C. § 841(b)(1)(A) under which Cornelius was sentenced mandated that any person who violates any subsection enumerated thereunder—including subsection (iii), involving 50 grams or more of a mixture containing cocaine base (e.g., crack)—"after a prior conviction for a felony drug offense has become final . . . shall be sentenced to a term of imprisonment which may not be less than 20 years . . . ."[14] Pub. L. No. 110-425, 122 Stat. 4828 (2008). Cornelius had been previously convicted of a felony drug offense. Also, to trigger that prior-conviction sentencing enhancement, the Government had filed, prior to trial, an information giving notice of its intent to rely upon the prior conviction, as required by 21 U.S.C. § 851(a). Cornelius admitted that he had indeed been convicted of such a prior offense.

At Cornelius's sentencing, however, despite the Government's invocation of the twenty-year mandatory minimum, the district court sentenced Cornelius to only 210 months, over the Government's objection. The court said that it was "satisfied that [it] could give the enhancement," and that it "th[ought] the Government, if they wanted to

---

[14] On August 3, 2010, the corresponding quantity under 21 U.S.C. § 841(b)(1)(A)(iii) increased to 280 grams. Pub. L. No. 111-220, 124 Stat. 2372. As discussed below, that change does not retroactively affect Cornelius's sentence.

really press the issue, is entitled to it." Doc. 1633 at 31-32. However, the court explained that it was "not going to do the 20 year minimum in [Cornelius's ] case," reflecting that it "ha[d] some flexibility" and that a twenty-year sentence would "fly in the face of some of the other purposes of sentencing and the principle . . . that a sentence should be as long as necessary but no longer than necessary to serve the purposes [of incarceration]." Id. at 32. To that end, the court identified its concerns about the injustice of crack/powder sentencing disparities and about the uncertainty regarding the drug quantity with respect to the conspiracy charge.

District courts lack discretion to depart below applicable statutory mandatory minimum sentences under 21 U.S.C. § 841, see Payton, 405 F.3d at 1173, except in particular circumstances not presented by this case, see Altamirano-Quintero, 511 F.3d at 1089-90. Accordingly, and given that the Government properly filed a § 851 information and sought the applicable sentence enhancement, the district court erred in imposing a sentence of less than twenty years' imprisonment for Count 28. We therefore vacate Cornelius's sentence and remand with instructions to the district court to resentence Cornelius in a manner consistent with this opinion.

*2. Constitutional and statutory arguments against the minimum sentence*[15]

Cornelius argues that, in relation to his crack-cocaine conviction on Count 28, the twenty-year statutory mandatory minimum sentence is both unconstitutional under the Fifth and Eighth Amendments, and barred by the Fair Sentencing Act of 2010, which Cornelius argues should apply retroactively to his sentence. We disagree.

Cornelius first argues that the Due Process Clause—which in the federal context guarantees equal protection under the law—should invalidate the disparate crack/powder sentencing regime as racially discriminatory against African Americans. As Cornelius observes, the crack/powder sentencing disparities have been criticized by courts, legislators, and commentators on policy grounds. However, the differential treatment of crack offenses and powder offenses under 21 U.S.C. § 841(b)—and hence the differential treatment of their respective offenders—appears unassailable on constitutional equal protection grounds. See United States v. Robertson, 45 F.3d 1423, 1445-46 (10th Cir.

---

[15] The Government urges us to consider these challenges moot, reasoning that Cornelius's statutory mandatory minimum sentence renders irrelevant any other sentencing claims, and citing United States v. Apperson, 441 F.3d 1162, 1213 (10th Cir. 2006) (holding moot a defendant's challenges to the calculation of his offense level and sentencing range under the Federal Sentencing Guidelines, since regardless of whether the district court erred in those calculations, the defendant was still subject to a statutory mandatory minimum life sentence under 21 U.S.C. § 841(b)(1)(A)). However, Cornelius does not appeal from the district court's factual findings under, or legal application of, the Sentencing Guidelines. Rather, Cornelius challenges the constitutional and statutory validity of the statutory provision under which he was sentenced. If the Court were to determine that the statute's differential treatment of crack cocaine offenses for sentencing purposes is unlawful, then relief might be warranted for Cornelius, as the foundation for his mandatory minimum sentence might evaporate in turn. As such, while Cornelius's arguments are ultimately meritless, they are not moot.

1995); see also United States v. McClellon, 578 F.3d 846, 861-62 (8th Cir. 2009). The passage of the Fair Sentencing Act did not render unconstitutional the previous sentencing regime, under which Cornelius was sentenced. See United States v. Acoff, 634 F.3d 200, 203 (2d Cir. 2011) ("Nothing in the text or legislative history of the [FSA] undermines the validity of . . . prior decisions [rejecting the equal protection argument made by Cornelius]. . . . '[A] congressional decision that a statute is unfair, outdated, and in need of improvement does not mean that the statute when enacted was . . . unconstitutional.'" (citation omitted)).

Next, Cornelius argues that his mandatory minimum sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment argument. However, as this argument appears for the first time in Cornelius's reply brief (in contrast to Cornelius's Fifth Amendment claim, which he made in his opening brief), we decline to entertain it on appeal. See Bronson v. Swensen, 500 F.3d 1099, 1104 (10th Cir. 2007). In the alternative, considering the merits of the argument, we reject that claim. Cornelius merely recites the general constitutional test for such cruel and unusual punishment claims, and then asserts in conclusory fashion that disparate sentencing fails to serve a legitimate penological function and is therefore unconstitutional. However, insofar as Cornelius complains of the disparity between his sentence and those of individuals convicted of powder-cocaine offenses, such a challenge is properly cognized under an equal-protection theory (rejected above). To the extent Cornelius argues that his sentence is unconstitutionally disproportionate to his offense, that claim is meritless. See, e.g.,

33

United States v. Huskey, 502 F.3d 1196, 1200 (10th Cir. 2007) (holding that a mandatory life sentence in light of prior-conviction sentence enhancement under 21 U.S.C. § 841(b)(1)(A) was not cruel and unusual punishment).

Moving on to Cornelius's statutory argument, Cornelius contends that the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010) ("FSA"), which took effect on August 3, 2010, after Cornelius was convicted, should be applied retroactively in his case. He asks this Court to remand in light of the FSA's reduction of certain crack/powder cocaine sentencing disparities under the contemporary sentencing regime, which included increasing certain requisite drug quantity amounts triggering mandatory minimum sentences for crack offenses. See FSA § 2(a). We decline to do so.

We have squarely held that the FSA does not apply retroactively, see United States v. Lewis, 625 F.3d 1224, 1228 (10th Cir. 2010), and we see no reason to deviate from that precedent in Cornelius's case. Our ruling is consistent with Dorsey v. United States, in which the Supreme Court more recently held that the more lenient penalty provisions of the FSA should apply "to offenders who committed a crack cocaine crime before August 3, 2010 [i.e., the date the FSA took effect], but were not sentenced until after August 3". 132 S. Ct. 2321, 2326 (2012); see also id. at 2335 ("For these reasons considered as a whole, we conclude that Congress intended the [FSA's] new, lower mandatory minimums to apply to the post-Act sentencing of pre-Act offenders. That is the [FSA's] 'plain import' or 'fair implication.'"). Cornelius was sentenced on May 12, 2010, before the FSA took effect. Thus, Cornelius's argument for retroactive application

34

of the FSA to his sentence is contrary to controlling case law—a conclusion that Cornelius recognizes in his briefs.

In conclusion, there is no constitutional or statutory infirmity in the mandatory minimum sentence for Cornelius's conviction under Count 28.

*3. Consideration of Cornelius's prior drug felony*

Aside from Cornelius's arguments that the statutory scheme under which he was convicted is fundamentally unlawful, Cornelius does not directly dispute that the district court was without discretion to sentence Cornelius to less than twenty years, if his prior felony drug conviction was properly considered. However, Cornelius argues that the district court should not have considered his prior felony drug conviction, reasoning that the court should have extended the exclusionary rule—a constitutional rule of evidence— to bar consideration of the prior conviction at sentencing. We reject this argument and conclude that Cornelius's prior conviction was properly considered for the purpose of his sentence enhancement.

Prior to trial, Cornelius moved to suppress the introduction of evidence stemming from an allegedly illegal search that was related to a 1995 state-court drug felony case in which Cornelius was convicted. Cornelius asserts that he pleaded guilty in that case because of the evidence obtained through the allegedly illegal search. In that case—Case No. 95 CR 383 in Sedgwick County District Court in Wichita, Kansas—Cornelius, then sixteen years old, was tried as an adult and convicted of possession of cocaine and criminal possession of a firearm. In the present case, the district court "granted as

35

uncontested" Cornelius's motion to suppress because the government proffered that it was unable to locate the search warrant from the prior case.[16]  R. Vol. 2. at 131.  At sentencing, however, the court rejected Cornelius's contention that the prior conviction should not be considered in the sentencing context.  That is, when the court had earlier granted Cornelius's evidentiary motion to suppress, the court had simply prohibited introduction of evidence stemming from the allegedly illegal search; it had not also deemed the prior conviction invalid such that the conviction could not be considered for sentence enhancement.

Cornelius's proposed application of the exclusionary rule is unwarranted.  The exclusionary rule is a constitutional rule of evidence that generally prevents fact-finders from considering evidence that would not have been available but for the use of unconstitutional means, such as an illegal search.  See United States v. Leon, 468 U.S. 897, 905-13 (1984).  The rule does not, however, serve to bar consideration of a valid prior conviction for the purposes of a sentence enhancement under 21 U.S.C. §§ 841 and

---

[16] Both Cornelius's motion to suppress and the district court's order refer to the prior case as 95 C 16303, rather than 95 CR 383, which was the case number referenced in the Government's § 851 information as well as Cornelius's Presentence Investigation Report ("PSR") in this case.  Cornelius also refers to 95 CR 383 in his briefs when making the present argument, yet he includes record cites to the documents that reference 95 C 16303.  It is not entirely clear, then, that these two prior cases are the same; but it appears that they are, judging additionally from the description of 95 C 16303 in the motion to suppress, in conjunction with the related description and discussion in the PSR and at the sentencing hearing.

851.[17]  All that was necessary for the purpose of sentence enhancement, in this context, was that Cornelius's prior conviction was a valid one.  See 21 U.S.C. § 851(d).  To that end, Cornelius does not dispute that the prior conviction in question was valid in the sense that it was lawfully entered and has not been overturned.  Moreover, in any event, Cornelius was statutorily precluded from challenging the validity of the prior conviction, as it occurred more than five years before the Government filed its information.  See id. § 851(e).  Given the validity of the prior conviction, the district court was required to apply the sentence enhancement.  See id. § 851(d)(1).

In sum, the district court properly considered Cornelius's prior felony drug conviction for the purpose of sentence enhancement vis-à-vis Count 28.  Thus, the district court had no discretion to depart below the statutory mandatory minimum twenty-year sentence pursuant to the applicable version of 21 U.S.C. § 841(b)(1)(A).

---

[17] It is true that the exclusionary rule is meant chiefly to deter unconstitutional police conduct, see Leon, 468 U.S. at 906-910; United States v. Graves, 785 F.2d 870, 876 (10th Cir. 1986)—a purpose arguably served by categorically preventing later courts from considering earlier convictions that allegedly resulted from illegal searches. However, it is also true that, despite the Supreme Court's "emphasis on the exclusionary rule's deterrent value," it is not the case that "anything which deters illegal searches is thereby commanded" by the rule. Leon, 468 U.S. at 910 (quotation marks, citation omitted). Cornelius's particular proposed application is without support. Cf. Graves, 785 F.2d at 873, 876 (holding that in the ordinary case, the exclusionary rule should not be extended to sentencing proceedings). This uncertainty is not determinative of our rulings today.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Cornelius's conviction. Further, we VACATE Cornelius's sentence and REMAND for sentencing consistent with this opinion.