# United States Court of Appeals
## For the First Circuit

No. 06-1025

WILLIAM FRYAR, et al.,

Plaintiffs, Appellants,

v.

SERGEANT WILLIAM CURTIS, et al.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Lipez Circuit Judge,
Tashima, Senior Circuit Judge,[*]
and Howard, Circuit Judge.

Theodore H. Goguen, with whom Joseph M. Mahaney and Goguen,
McLaughlin, Richards & Mahaney, LLP, were on brief for appellant.
Maria F. Romero for appellees.

May 8, 2007

---

[*]   Of the Ninth Circuit, sitting by designation.

**TASHIMA**, **Senior Circuit Judge**. William Fryar appeals several matters arising from his civil jury trial against Sergeant William Curtis, a corrections officer at the Suffolk County House of Correction ("SCHOC"). According to the complaint, while Fryar was incarcerated at SCHOC, Sergeant Curtis physically abused him, violating his state and federal constitutional rights and committing common law assault and battery against him. The case started as a class action, which involved numerous plaintiffs and defendants and numerous incidents that allegedly occurred at SCHOC. As ultimately tried, and by agreement of the parties, the trial determined only Fryar's claims against Curtis individually, and the trial resulted in a jury verdict in favor of Curtis. On appeal, Fryar challenges the district court's decisions to have the case proceed against a single defendant, Curtis, and not to instruct the jury or allow comments by counsel on the previous status of the case as a class action. Fryar further challenges the exclusion at trial of a report by a special commission that investigated the prison, for use in general and for purposes of impeachment. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I. BACKGROUND

Fryar suffers from muscular dystrophy, a progressive degenerative genetic disease that affects muscle strength, and which resulted in numerous sudden falls. In 1998, he was incarcerated at SCHOC for the offense of drug possession. He was

housed in a drug recovery unit known as "the 3-4 Unit."

At the time of the incident giving rise to this lawsuit, Sergeant Curtis and two other officers were assigned to the 3-4 Unit. On June 14, 1998, at 1 p.m., the cell doors were opened by a remote panel to release the inmates for a recreational period. After five minutes, Curtis proceeded to close and secure the doors, pursuant to SCHOC practice. As he approached cell 7 or cell 8, he heard five or six loud bangs and proceeded to investigate. As he approached cell 12, the cell door opened and two inmates stepped out. He told them to "step back inside." One of the inmates complied and the other, Fryar, refused. Without success, Curtis ordered Fryar two additional times to step back into his cell.

Instead of stepping back, according to Curtis, Fryar put his hand up towards Curtis' face. Curtis closed the cell door and told Fryar to get against the wall, and placed his hand out on Fryar's right shoulder blade. Then, as Curtis testified, Fryar "just fell." When the nurse who arrived on the scene asked what happened, Fryar "didn't say anything else but, 'I fell down.'" Fryar was taken for emergency medical treatment and was admitted to the institutional infirmary. Curtis' description of the incident, as just recounted, is to be contrasted with Fryar's allegation in the complaint, that:

> Curtis came into Mr. Fryar's[] room, grabbed him by the hair and drove his face into a wall several times. The force of the beating was tremendous, causing a tooth to be dislodged, another tooth to break apart and his lip to

-3-

split open.  After the beating, . . . Curtis told [the nurse] that Mr. Fryar hurt himself by falling.

Offering this account, Fryar filed suit in Suffolk County Superior Court as one of fifty-five former and current inmates in a class action against eighty-six defendants, including individual corrections officers and supervisory personnel at SCHOC.  The plaintiffs alleged, among other things, violations of their constitutional rights under the state and federal Constitutions, assault and battery, and intentional infliction of emotional distress.

On May 15, 2000, the action was removed to federal district court.  The plaintiffs thereafter amended their complaint and filed two complaints, the Third Amended Complaint, Part I (the "Class Action Complaint") and the Third Amended Complaint, Part II (the "Individual Plaintiffs' Complaint").  On May 10, 2005, the district court dismissed the Class Action Complaint with prejudice upon approval of a settlement agreement.

On May 25, 2005, the district court held a status conference and ordered the plaintiffs' counsel to choose five individual cases from the Individual Plaintiffs' Complaint, from which the first case to be tried would be selected.  The parties submitted final pretrial memoranda memorializing the sole claim to be tried first: Fryar's claim against Sergeant Curtis arising out of the incident of June 14, 1998.

On October 23, 2005, Curtis filed a motion in limine to

-4-

exclude evidence of a commissioned investigative report of the prison (the "Stern Report"), arguing that the report was hearsay and not probative. Fryar's counsel stated that he did not plan to adduce evidence of the Stern Report, except potentially indirectly, and he agreed to inform the court before doing so.

At the same time, Fryar's counsel asked that evidence be admitted relating to the alleged misconduct of officers other than Curtis. Curtis' counsel argued in response that "[a]ny mention of the other 54 plaintiffs and 85 defendants would severely prejudice the jury and draw [a] negative inference." The district court informed the jury:

> Although there were, and are, complaints by other inmates against other corrections officers for incidents during this same general period of time, for you the only question – the only question that you will need to address is whether this corrections officer, Mr. Curtis, did violate this plaintiff, Mr. Fryar's constitutional rights, okay?

The court also reiterated its statement that "[t]his case . . . concerns one plaintiff, Mr. William Fryar, who complains that one corrections officer, Mr. Curtis, violated his constitutional rights, his rights under the Federal Constitution and his rights under the State constitution by hitting his head against the wall and kicking him."

During the course of trial, the defense called SCHOC Superintendent Gerard Horgan to the stand, who testified to, among other things, the training of Curtis and other officers at SCHOC.

The court <u>sua sponte</u> inquired into the relevance of this testimony. Shortly thereafter, counsel for Fryar requested permission to impeach Horgan's testimony regarding training of the officers and the conditions at SCHOC by reference to the Stern Report, and the district court denied this request.

On October 28, 2005, in accordance with the verdict, judgment was entered in favor of defendant Curtis on all counts, and Fryar thereafter filed a timely notice of appeal.[1]

## II.  STANDARD OF REVIEW

We review for abuse of discretion a district court's decisions regarding the admissibility of evidence. <u>Ramirez</u> v. <u>Debs-Elias</u>, 407 F.3d 444, 449 (1st Cir. 2005); <u>Lubanski</u> v. <u>Coleco Indus., Inc.</u>,

---

[1]    Fryar's appellate brief does not comply with Federal Rules of Appellate Procedure 28 and 30, in that, for example, it does not include "a statement of facts relevant to the issues submitted for review *with appropriate references to the record*," Fed. R. App. P. 28(a)(7) (emphasis added), and Fryar did not "prepare and file an appendix to the briefs." Fed. R. App. P. 30(a). Although Fryar filed documents as an addendum to the Blue Brief, First Circuit Local Rule ("L.R.") 28, which requires appellants to file addenda, operates independently of the requirement to file an appendix pursuant to Fed. R. App. P. 30. See L.R. 28(a)(1); Fed. R. App. P. 30(a)(1)(A)-(D).
Where an appellant has provided defective briefs, "'the court in its discretion . . . may scrutinize the merits of the case insofar as the record permits, or may dismiss the appeal if the absence of a [record] thwarts intelligent review.'" <u>Credit Francais Int'l, S.A.</u> v. <u>Bio-Vita, Ltd.</u>, 78 F.3d 698, 700 (1st Cir. 1996) (quoting <u>Moore</u> v. <u>Murphy</u>, 47 F.3d 8, 10 (1st Cir. 1995)) (alterations in original). Given the appendix provided by Curtis, there is a sufficient record to reach the merits, <u>see</u> <u>id.</u>, and we choose to do so. Because, however, appellant has failed to provide a compliant statement of facts, we resolve any ambiguities against him. See <u>Alberty-Velez</u> v. <u>Corporacion de Puerto Rico Para La Difusion Publica</u>, 361 F.3d 1, 4 n.1 (1st Cir. 2004).

929 F.2d 42, 45 (1st Cir. 1991). "Erroneous evidentiary rulings are harmless if it is highly probable that the error did not affect the outcome of the case." McDonough v. City of Quincy, 452 F.3d 8, 19-20 (1st Cir. 2006). In addition, "[c]hallenges to jury instructions are reviewed for an abuse of discretion." United States v. Figueroa-Encarnacion, 343 F.3d 23, 29 (1st Cir. 2003).

## III. FAILURE TO PROCEED AS A CLASS ACTION

Fryar argues that the district court erred by failing to allow the case to proceed against various supervisory officials. As clarified at oral argument, however, Fryar concedes that the case proceeded only against defendant Curtis, rather than against all of the original defendants, *by agreement of the parties*. This affirmative agreement to proceed against Curtis alone waived Fryar's right to review on this issue. "An issue is waived when a defendant intentionally relinquishes or abandons a legal right." United States v. Hansen, 434 F.3d 92, 101 (1st Cir. 2006) (finding jury instruction issue waived when the defendant indicated, "I am content," after the district court omitted the requested instruction); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("'[A] litigant has an obligation "to spell out its arguments squarely and distinctly," or else forever hold its peace.'") (quoting Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988)).

Even if one assumes that an objection to the decision to

-7-

proceed against a single defendant was not waived, the decision is harmless in light of the jury verdict in favor of Curtis.  See Calvi v. Knox County, 470 F.3d 422, 429 (1st Cir. 2006) ("It follows that the inadequate training of a police officer cannot be a basis for municipal liability . . . unless a constitutional injury has been inflicted by the officer or officers whose training was allegedly inferior."); Jordan v. Fournier, 324 F. Supp. 2d 242, 250 (D. Me. 2004) ("If there is no underlying constitutional violation by the three arresting officers, Jordan cannot hold the other defendants liable on theories of failure to supervise or policy and custom.") (citing Gero v. Henault, 740 F.2d 78, 84-85 (1st Cir. 1984)).

Alternatively, Fryar argues that the jury should nonetheless have been informed, through instruction or argument of counsel, that his case arose from and was pled as part of a class action. Despite counsel's contention that the jury "should have known" about this case history and that this history was central to what the case was about, Fryar fails to establish how this testimony was relevant to whether Curtis assaulted Fryar, which is the specific issue the trial was intended to assess.  See De Araujo v. Gonzales, 457 F.3d 146, 153 (1st Cir. 2006) ("[C]onclusory statements, without further development, do not rise to the level of a cognizable appellate argument.").  We conclude that because, by agreement of the parties, the sole issue before the jury was

whether Curtis committed the acts alleged by Fryar, the district court did not abuse its discretion by foregoing potentially confusing jury instructions and information regarding the procedural history of the case that was not probative of the underlying factual dispute. See, e.g., Fed. R. Civ. P. 20(b) ("The court . . . may order separate trials or make other orders to prevent delay or prejudice."); Buchanan v. Demong, 654 F. Supp. 139, 140 (D. Mass. 1987) (action originally pled as class action proceeded individually).

## IV. THE STERN REPORT

Fryar further contended in his brief that the district court abused its discretion by precluding admission of the Stern Report, both in Fryar's case-in-chief and for impeachment purposes. At oral argument, Fryar's counsel clarified that he is not challenging the district court's ruling on the use of the Stern Report in his case-in-chief. Instead, Fryar's counsel focused on the district court's decision not to allow Fryar to use the Stern Report to contradict Superintendent Horgan's testimony regarding the training of corrections officers and the conditions at SCHOC. Fryar's counsel points to authority that when the defense opens the door to impeachment through testimony on direct, the opposing party may try to establish that this testimony is false through the introduction of evidence, including otherwise inadmissible evidence, that contradicts the direct testimony. See, e.g., United States v.

<u>Morla-Trinidad</u>, 100 F.3d 1, 4-5 (1st Cir. 1996). Therefore, although Fryar concedes, as he must, that the district court permitted him to cross-examine Horgan, Fryar contends that the value of his right to cross-examine Horgan was substantially diminished by being precluded from referencing the Stern Report.

As this Court has repeatedly observed, however, "a party may not present extrinsic evidence to impeach a witness by contradiction on a collateral matter." <u>United States</u> v. <u>Beauchamp</u>, 986 F.2d 1, 3 (1st Cir. 1993). As relevant to this case, <u>Beauchamp</u> provides the following definition of collateral evidence:

> A matter is considered collateral if "the matter itself is not relevant in the litigation to establish a fact of consequence, i.e., not relevant for a purpose other than mere contradiction of the in-court testimony of the witness." 1 McCormack on Evidence § 45, at 169. Stated another way, extrinsic evidence to disprove a fact testified to by a witness is admissible when it satisfies the Rule 403 balancing test and is not barred by any other rule of evidence. <u>See</u> <u>United States</u> v. <u>Tarantino</u>, 846 F.2d 1384, 1409 (D.C. Cir. [1988]) ("The 'specific contradiction' rule . . . is a particular instance of the trial court's general power under Fed. R. Evid. 403 to exclude evidence 'if its probative value is substantially outweighed . . . by considerations of undue delay, [or] waste of time.'").

<u>Id.</u> at 4.

This case involved, as the district court put it, "one plaintiff, Mr. William Fryar, who complains that one corrections officer, Mr. Curtis, violated his constitutional rights." Accordingly, it is, at best, a close question whether additional evidence regarding the training of officers or the conditions at

-10-

SCHOC would have assisted the jury. It seems more likely that such evidence would have resulted in confusion of the issues, or misleading the jury, and the undue consumption of time, as the district court evidently surmised. See Fed. R. Evid. 403.

Even assuming that evidence of Curtis' training and acts of impropriety by other personnel at SCHOC were facts of consequence to the question of Curtis' conduct on June 14, 1998, but see, e.g., Beauchamp, 986 F.2d at 3 (finding evidence that defendant lied about his address excludable), we need not reach the question of whether generalized extrinsic evidence of conditions at a prison is relevant to alleged physical abuse by one of its corrections officers of an inmate. Whether or not it was error to exclude the Stern Report for use for impeachment, any error is harmless "if it is highly probable that the error did not affect the outcome of the case." McDonough, 452 F.3d at 19-20.

Although Fryar's counsel was not permitted to make use of the Stern Report on cross-examination, Horgan was extensively cross-examined. More significantly, Horgan's testimony did not involve direct observation of the events alleged and, as the district court noted, was of questionable relevance, especially given the parties' agreement that the only issue before the jury was Curtis' treatment of Fryar on June 14, 1998. Therefore, even if the district court abused its discretion by excluding the Stern Report and limiting cross-examination on that subject, the error

was harmless.

**V.    CONCLUSION**

For the reasons set forth above, we affirm the judgment of the district court.

**AFFIRMED.**