FILED
United States Court of Appeals
Tenth Circuit

**March 5, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

WHITNEY McBRIDE, and
ODYSSEY INTERNATIONAL, INC.,

     Defendant - Appellants.

Nos. 22-4119 & 22-4122

_____

**Appeals from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:20-CR-00287-DBB)**

_____

Matthew R. Lewis, Kunzler Bean & Adamson, PC, Salt Lake City, Utah, for Defendant-Appellant.

Nathan H. Jack, Assistant United States Attorney (Trina A. Higgins, United States Attorney, with him on the brief), Office of the United States Attorney, Salt Lake City, Utah, for Plaintiff-Appellee.

_____

Before **EID**, **SEYMOUR**, and **KELLY**, Circuit Judges.

_____

**SEYMOUR**, Circuit Judge.

_____

Whitney McBride was tried and convicted for five offenses based on fraudulent

conduct in obtaining a government contract via her company Odyssey International Inc.

("Odyssey") to service the Army base at Fort Drum, New York. On appeal, McBride argues that her convictions for conspiracy, wire fraud, and major fraud should be vacated based on *Ciminelli v. United States*, 598 U.S. 306 (2023), which was decided by the Supreme Court after her conviction. She further argues her conviction for making a false declaration should be vacated due to errors in the jury instructions. Because of McBride's numerous procedural errors, we affirm.

## Background

In 2011, Whitney McBride and Odyssey won a $99 million government contract servicing the Army base at Fort Drum. To bid on and win the contract, however, Odyssey was required to be HUBZone-eligible.[1] Odyssey was not. Undeterred, McBride made it appear as though Odyssey *was* HUBZone-eligible by cooking the books and fudging the numbers.

McBride's fraudulent practices did not go unnoticed by the losing bidders, who submitted bid protests against Odyssey. To defeat an allegation of common ownership between Odyssey and the incumbent contractor, Cadence, McBride submitted a letter to the Small Business Administration denying any relationship between Odyssey and Patrick Hendrickson, an attorney serving as Cadence's CAO who had done prior work for Odyssey on another bid. Odyssey subsequently defeated the bid protests and began work.

---

[1] A company is HUBZone-eligible if at least thirty-five percent of the company's employees live in a Historically Underutilized Business Zone.

Federal agents eventually investigated Odyssey and McBride, uncovering their fraud. In August 2020, Odyssey and McBride were indicted for conspiracy to commit wire fraud, wire fraud, and major fraud against the United States. When prosecutors sought to interview Hendrickson as part of their investigation, McBride filed a declaration claiming that her prior letter denying an attorney-client relationship between Odyssey and Hendrickson was false and that Hendrickson *had* been an attorney for Odyssey.[2] This led the government to bring an additional charge against McBride for making a false declaration before a court.[3]

The case proceeded to trial where the parties proposed joint jury instructions. Relevant here, the district court adopted, without alteration, the language proffered by McBride and the government defining a "scheme to defraud" under Count II. The parties could not agree on the instruction for Count V for making a false declaration, however. McBride sought to add language instructing the jury on the substantive law of attorney-client relationships. The government sought to exclude that language. The court ultimately declined to add McBride's proposed language. It reasoned that whether there

---

[2] Meaning that communications between Odyssey and McBride and Hendrickson were protected under attorney-client privilege.

[3] The Second Superseding Indictment brought five total counts. Count I of the indictment charged McBride and Odyssey with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. Count II charged McBride and Odyssey with wire fraud in violation of 18 U.S.C. § 1343. Count III charged McBride and Odyssey with major fraud against the United States in violation of 18 U.S.C. § 1031. Count IV charged McBride with making a false statement to government agents in violation of 18 U.S.C. § 1001(a)(2). Count V charged McBride with making a false declaration before the court in violation of 18 U.S.C. § 1623(a).

3

was an attorney-client relationship between Odyssey and Hendrickson was immaterial because Count V alleged McBride had made a false statement about her *belief* regarding whether an attorney-client relationship existed. McBride and Odyssey were convicted on all counts. This timely appeal followed.

Eleven months after the convictions of McBride and Odyssey the Supreme Court decided *Ciminelli*. There, the Court held that the Second Circuit's "right to control" theory of fraud was an invalid basis for liability under 18 U.S.C. § 1343. *Ciminelli*, 598 U.S. at 309. "Because 'potentially valuable economic information' 'necessary to make discretionary economic decisions' is not a traditional property interest," the Court instructed, "the right-to-control theory is not a valid basis for liability under § 1343." *Id.*

## Discussion

McBride contends her convictions on Counts I, II and III should be vacated because *Ciminelli* required the jury to be instructed that federal fraud statutes only protect "traditional property interests." Pointing to *Ciminelli*, McBride now attempts to convince us that the prosecution's theory of the case was inextricable from and anchored in the now-erroneous "right to control" theory. She further argues that her conviction on Count V should be vacated because the jury instructions improperly paraphrased her alleged false statement and misstated the law, and the government failed to meet its burden of proving her statement was false. Whatever the merits of these arguments, however, we decline to address them because of McBride's numerous procedural stumbles.

**A. McBride waived her challenges to Counts I, II, and III because she invited error and also failed to plead plain error.**

4

Those who disregard procedural requirements play a dangerous game and do so at their peril. This appeal proves that point. Pursuant to Federal Rule of Appellate Procedure 28(a)(8)(B), appellants are required to set forth the standard of review applicable to appellate review. McBride utterly fails to do this, so we note it here ourselves. In a properly briefed case, we review a "district court's decision to give or not give a particular jury instruction" for abuse of discretion. *United States v. Jereb*, 882 F.3d 1325, 1335 (10th Cir. 2018). "[W]e review the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law." *Id.* (quoting *United States v. Sharp*, 749 F.3d 1267, 1280 (10th Cir. 2014)). If an appellant fails to object to a particular jury instruction below, we review for plain error. *Id.*

1. Invited Error

We first address McBride's argument that her convictions on Counts I, II, and III—conspiracy to commit wire fraud, wire fraud, and major fraud against the United States respectively—must be vacated because the jury instructions given were improper post-*Ciminelli*.[4] Specifically, McBride contends the jury instruction defining a "scheme to defraud" was improper because it failed to appropriately caution the jury that, as clarified by the Supreme Court in *Ciminelli*, federal fraud statutes only protect

---

[4] We pause to note that the jury instruction McBride challenges clearly refers to an element of Count II, and likely to one of Count III. Because it is ultimately irrelevant, we simply note that McBride fails to explicitly explain why even if we agreed the jury instruction was error and vacated her convictions on Counts II and III, such a ruling would also require vacating her conviction on Count I.

5

"traditional property interests." As such, McBride argues that the instruction, which only defined the object of a "scheme to defraud" as "money or property," was insufficient because it allowed the jury to convict McBride and Odyssey if it found that they had "merely intended to cause the government to dispense funds contrary to a government policy," even if they had not intended to and did not ultimately harm the government's traditional property interests. Aplt. Br. at 12. It is here, the government counters, that McBride runs into her first hurdle on appeal: McBride herself offered the instruction about which she now complains and is therefore precluded from challenging it under our invited error doctrine. We agree.

Generally, "the invited-error doctrine precludes a party from arguing that the district court erred in adopting a proposition that the party had urged the district court to adopt." *United States v. Deberry*, 430 F.3d 1294, 1302 (10th Cir. 2005). A party who "induces an erroneous ruling" from the district court may not then seek sanctuary from the consequences of that ruling through an appeal. *Id.* In jury instruction challenges specifically, our caselaw forecloses "this Court [from engaging] in appellate review when a defendant has waived his right to challenge a jury instruction by affirmatively approving it at trial." *United States v. Cornelius*, 696 F.3d 1307, 1319 (10th Cir. 2012). *See also, e.g., United States v. Visinaiz*, 428 F.3d 1300, 1310–11 (10th Cir. 2005) (holding that the defendant's challenge to his own proffered instruction was "thereto [] precluded as invited error"); *United States v. Sturm*, 673 F.3d 1274, 1281 (10th Cir. 2012) ("[The defendant] did not object to the theory of defense instruction given at trial,

6

and proffered the challenged instruction himself. His attack on the sufficiency of this instruction is therefore barred by the invited-error doctrine . . . ."); *United States v. Harris*, 695 F.3d 1125, 1130 n.4 (10th Cir. 2012) (holding that a "defendant who proffers his or her own instruction, persuades the court to adopt it, and then later seeks to attack the sufficiency of that instruction" has invited error); *Jereb*, 882 F.3d at 1340 (holding that the invited error doctrine applied when a defendant "requested (and received) jury instructions" he had sought).

The government argues, and McBride conceded at oral argument, that McBride proffered the instruction she now attacks. The government and McBride submitted joint jury instructions to the trial court. True, the parties did not entirely agree on the instruction at issue, Instruction No. 35, and they submitted competing instructions to that end.[5] However, that is immaterial. What McBride challenges is the definition of a "scheme to defraud," which she argues is insufficient under *Ciminelli*'s new

---

[5] A redline review of the competing Prosecution and Defense No. 35 Instructions shows that the only divergence between the two is the language defining "false" or "fraudulent." Specifically, the prosecution's instruction defined a representation as "false" or "fraudulent" "if it is known by the defendant to be untrue or *is made with the defendant's reckless indifference as to its truth or falsity.*" Rec., vol. I at 79 (emphasis added). The defense's instruction defined a representation as "false" or "fraudulent" "if it is known by the defendant to be untrue or *is made by the defendant with reckless indifference as to its truth or falsity.*" *Id.* at 81 (emphasis added). The district court offered its own instruction at trial, but it is not on that distinction that McBride appeals.

We note that there were dueling instructions for Instruction No. 36 (major fraud). However, the district court adopted language defining "scheme or artifice to defraud the United States" wholesale, with appropriate adaptations, from the Prosecution and Defense No. 35 Instructions defining a "scheme to defraud."

understanding of federal fraud statutes. That definitional language in the Defense Instruction was the same as that included in the Prosecution Instruction and, more importantly, the same as that ultimately adopted by the trial court. For the purposes of this appeal, then, we consider the district court as having adopted McBride's proposed language. We note that, although it is insufficient standing alone, the defense also failed to object to that instruction.[6] *See Harris*, 695 F.3d at 1130 n.4.

In her reply, McBride halfheartedly implies that our "supervening decision doctrine" offers a metaphorical escape-hatch from her invited error. She seemingly argues that she could not object to (and never would have offered) her instruction because *Ciminelli* changed our understanding of federal fraud law only *after* her trial concluded. Therefore she contends *Ciminelli*'s intervening change excuses her error.

Our circuit has long recognized an exception to the invited error doctrine, known either as the "supervening decision doctrine" or the "intervening decision doctrine." *Compare Anixter v. Home-Stake Production*, 77 F.3d 1215, 1231 (10th Cir. 1996), *with Ray v. Unum Life Ins. Co. of America*, 314 F.3d 482, 487 (10th Cir. 2002), *and United States v. Titties*, 852 F.3d 1257, 1264 n.5 (10th Cir. 2017). The exception holds that the invited error doctrine is per se inapplicable when a party relied on settled law below that changed while the case was on appeal. *Titties*, 852 F.3d at 1264 n.5.

---

[6] There was a numbering change of the jury instructions over the course of the litigation below. The jury instruction for Count II was initially numbered Instruction No. 35 and sometime later No. 32. The instruction was numbered No. 32 during the jury instruction conference and in the final jury instructions.

To the extent McBride argues that this exception applies to her case, we are not persuaded. As we noted clearly in *Titties*, McBride can successfully invoke the exception only if she relied on settled (now erroneous) law when proffering her jury instructions. *See Titties*, 852 F.3d at 1264 n.5 (agreeing with the defendant's argument that "the invited-error doctrine does not apply when a party *relied on settled law* that changed while the case was on appeal" (emphasis added)). Two reasons cut against applying the exception here. First, and most importantly, McBride nowhere claims to have relied on settled law when proffering the instruction she challenges. All she asserts is that federal fraud law changed post-*Ciminelli* when the Supreme Court ruled the "right to control" theory invalid. This assertion misses the mark. What is key for the supervening decision

doctrine's applicability is that the law *upon which a party relied* below has changed.[7] *Id.*

McBride fails to explicitly, much less persuasively, make this argument.[8]

Our instinct that McBride did not rely on the "right to control" theory when

proffering her instructions is further confirmed because she does not cite—let alone claim

---

[7] The concurrence accuses us of ostensibly "announc[ing] additional requirements for the supervening-decision doctrine" by adding a "reliance" requirement. Concurring Op. at 7. Not so. We did not conjure "reliance" out from the ether: *Titties* articulates the reliance prong of the exception, and we follow our caselaw's lead. *See Titties*, 852 F.3d at 1264 n.5.

We are unconvinced by the concurrence's consternation over the "subjective" inquiries a reliance requirement would invite. Concurring Op. at 6. As the concurrence itself admits, we already engage in such inquiries. Consider how we determine a litigant has "knowingly and intelligently relinquished" a claim below such that it becomes waiver. *Cornelius*, 696 F.3d at 1319 ("A waived claim or defense is one that a party has knowingly and intelligently relinquished; a forfeited plea is one that a party has merely failed to preserve." (quoting *Wood v. Milyard*, 566 U.S. 463, 470 n.4 (2012))). We engage in a subjective inquiry, but, of course, our inquiry is not unmoored. We infer from a litigant's actions below and her arguments on appeal whether she waived an argument. *See, e.g.*, *Jereb*, 882 F.3d at 1340 (analyzing whether Jereb's actions below, including requesting a specific jury instruction, "were enough to convert a forfeiture . . . into an invited error" waiver). Given that we already engage in such inquiries in the waiver context, we do not see why such inquiries are incompatible with our analysis of a waiver exception.

[8] McBride notes in passing that the "evidence admitted at trial" would have been "drastically altered" and would have "allowed [her] to demonstrate that the government did not suffer economic loss" if her trial had taken place post-*Ciminelli*. Aplt. Reply at 6. Without more than a conclusory paragraph, we decline to divine an affirmative argument that she relied on the validity of the "right to control" theory when litigating this case. If McBride expects us to interpret the tea leaves of her reply brief as arguing that she so relied, or to otherwise make her arguments for her, she is mistaken. *See United States v. Yelloweagle*, 643 F.3d 1275, 1284 (10th Cir. 2011) ("We cannot make arguments for [the defendant]."); *Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999) ("This court . . . will not craft a party's arguments for him.").

to have relied on—our own circuit's caselaw upholding it.[9] Indeed, nowhere does McBride offer a case establishing the necessary premise that our circuit has adopted the "right to control" theory. McBride's failure to at all substantiate her argument with our caselaw causes us to infer that the "right to control" theory played no role in her proposed jury instructions.[10]

Second, based on our own investigation of the record, we are not convinced that the law upon which McBride *did* rely changed post-*Ciminelli*. In a footnote to the definition of a "scheme to defraud" in Defense Instruction No. 35 (McBride's proposed instruction), McBride wrote: "Modified from pattern instruction in light of *Kelly v. United States*, __ U.S. __, 140 S. Ct. 1565 (2020) (scheme to defraud necessarily means a scheme whose object is to obtain money or property)." Rec., vol. I at 81. McBride thus

---

[9] We read, for example, cases like *United States v. Simpson*, 950 F.2d 1519 (10th Cir. 1991), and *United States v. Welch*, 327 F.3d 1081 (10th Cir. 2003), as endorsing the very "right to control" theory struck down in *Ciminelli*. *See Simpson*, 950 F.2d 1523 ("A conspiracy to defraud the victim of the use *or control of his money* is also within the purview of the wire fraud statute." (emphasis added)); *Welch*, 327 F.3d at 1108 ("[W]e have recognized the intangible *right to control one's property* is a property interest within the purview of the mail and wire fraud statutes." (emphasis added)).

[10] McBride does not even argue the government relied on cases like *Simpson* or *Welch* when drafting the joint jury instructions. That McBride does not (or cannot) argue that either party to this litigation relied on our cases endorsing the "right to control" theory surely undermines her challenge.

ostensibly relied on *Kelly v. United States*. Here, we simply note that there could be no error on this point because *Ciminelli* affirmed *Kelly*.[11]

McBride invited her own error when she persuaded the district court to adopt the "scheme to defraud" instruction she proposed. She does not persuasively argue that our supervening decision doctrine allows her challenge now because she offers no evidence that the law (if any) that she relied on when proffering that instruction changed post-*Ciminelli*. Disarmed of the exception, McBride's invited error amounts to a waiver of her argument, and appellate review is barred. *Jereb*, 882 F.3d at 1341 (holding that a defendant's appellate challenge to his own proffered instruction was "barred" under the invited error doctrine); *see also Cornelius*, 696 F.3d at 1320; *Deberry*, 430 F.3d at 1302. We therefore affirm her conviction on Counts I, II, and III.

Alternatively, because McBride fails to argue for any standard of review on appeal, including plain error, we also find her argument to reverse her convictions on Counts I, II, and III separately waived. It is to that issue we now turn.

2. Plain Error

Even if we were to find that McBride's actions below did not amount to invited error or that our supervening decision doctrine otherwise excused her error, we would

---

[11] As just one example, the Court cites *Kelly* approvingly when crafting one of *Ciminelli*'s key tenets, specifically that "the Government must prove not only that wire fraud defendants 'engaged in deception,' but also that money or property was 'an object of their fraud.'" *Ciminelli*, 598 U.S. at 312 (citing *Kelly*, 590 U.S. at __, 140 S.Ct. at 1571).

12

still affirm her convictions on Counts I, II, and III because she has failed to argue plain error on appeal.

Typically, plain error would be the correct standard of review for a challenge of this kind, i.e. an unpreserved jury instruction claim. *See, e.g., Jereb*, 882 F.3d at 1335. It is the obligation of the appellant to identify, and argue for, that standard. "A party cannot count on us to pick out, argue for, and apply a standard of review for it on our own initiative." *McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010). The Federal Rules of Appellate Procedure themselves mandate this: "The appellant's brief *must* contain . . . (8) the argument, which *must* contain . . . (B) for each issue, a concise statement of the applicable standard of review." Fed. R. App. P. 28(a)(8)(B) (emphasis added).

As aptly explained in *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011), "[T]he failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court." *See also United States v. Lamirand*, 669 F.3d 1091, 1100 n.7 (10th Cir. 2012) (same); *United States v. MacKay*, 715 F.3d 807, 831 (10th Cir. 2013) (same). "When an appellant fails to preserve an issue and also fails to make a plain-error argument on appeal, we ordinarily deem the issue waived (rather than merely forfeited) and decline to review the issue at all—for plain error or otherwise." *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019). *See also Havens v. Colo. Dep't of Corrs.*, 897 F.3d 1250, 1260 (10th Cir. 2018); *Lamirand*, 669 F.3d at 1099 n.7; *United States v. Wright*, 848 F.3d 1274, 1281 (10th Cir. 2017); *United States v. Isabella*, 918 F.3d 816, 845 (10th Cir.

2019) ("Ordinarily, 'an appellant who fails to preserve an evidentiary objection below may argue and establish plain error on appeal,' however, a 'failure to argue plain error on appeal waives the argument.'" (quoting *United States v. Roach*, 896 F.3d 1185, 1192 (10th Cir. 2018) (alterations removed)). Although "we have left open the door for a criminal defendant to argue error in an opening brief and then allege plain error in a reply brief after the Government asserts waiver," *Leffler*, 942 F.3d at 1198, we "will not consider an appellant's argument unless it attempts to 'run the gauntlet created by our rigorous plain-error standard of review.'" *Isabella*, 918 F.3d at 845 (quoting *United States v. McGehee*, 672 F.3d 860, 876 (10th Cir. 2012)).

We find *United States v. Isabella* strikingly exemplative. There, Isabella objected to the relevance of an expert's testimony, but not to the expert's qualifications. *Isabella*, 918 F.3d. at 844–45. When he raised the issue of the expert's qualifications on appeal, Isabella was thus entitled only to plain error review. *Id.* at 845. But Isabella did not argue plain error. *Id.* He mentioned plain error "only in a single paragraph (without any citations)" in his reply, "state[d] in a conclusory fashion that the district court committed plain error," did not "recite our plain error standard until the final page of his reply brief," and "simply assert[ed] the plain error elements [were] met." *Id.* This, we held, did not "permit 'the adversarial process to be served'" and operated as a waiver of Isabella's argument. *Id.* (quoting *United States v. Zander*, 794 F.3d 1220, 1232 n.5 (10th Cir. 2015)).

Here, because McBride failed to preserve her challenges to Counts I – III, she was required to plead plain error on appeal to avoid those challenges being waived. Nowhere does she do so. "[McBride's] opening appellate brief neither identifies any standard of review nor provides any defense of that standard's application." *Yuen*, 618 F.3d at 1189. Like in *Isabella*, McBride does not address plain error in her opening brief. Unlike *Isabella*, in her reply McBride fails to substantively address the plain error issue at all, despite being on notice of the government's waiver argument. She dismisses the government's waiver assertions only at the very end of her reply. She does not cite the plain error standard or its elements, or purport to fit her assertions into that standard. McBride's sole claim that "[t]he change in the law by *Ciminelli* clearly affected Appellant's substantial rights" is not enough.[12] Aplt. Reply at 6. McBride's arguments are conclusory, speculative, and without substantial support or citation. She offers no support or further argument for the assertion that *Ciminelli* "worked a change in the law" that might have "altered the evidence admitted at trial and allowed the Appellants to

---

[12] Rather than arguing for plain error and how she might meet it, McBride insists both in her reply and during oral argument that one of our cases, *Anixter v. Home-Stake Production*, 77 F.3d 1215 (10th Cir. 1996), allows her to forgo our circuit's briefing requirements. *Anixter*'s text does not support such a bold proposition. In *Anixter*, our court laid the foundation of this circuit's supervening decision doctrine when it found that "the interests of justice . . . reject forcing an appellant to object to a jury instruction where, based on the state of the then applicable law, her objection would have been futile." *Id.* at 1232. Nowhere does the court touch the issue of appellate briefing deficiencies in its opinion. Whatever else *Anixter* may stand for, it does not stand for the principle that a supervening change in the law allows an appellant to ignore all briefing requirements on appeal. And McBride points to no other caselaw supporting such a conclusion.

15

demonstrate that the government did not suffer economic loss." *Id.* And as we said in *Isabella*, this court is not in the business of filling in the gaps for insufficient arguments. *C.f. Isabella*, 918 F.3d at 845 (noting that an argument that is "too general and conclusory" will not warrant review (quoting *Collins v. Diversified Consultants Inc.*, 754 F. App'x 714, 718 (10th Cir. 2018))). *See also Kerber v. Qwest Pension Plan*, 572 F.3d 1135, 1146 (10th Cir. 2009) (rejecting plaintiffs' argument "as inadequately briefed" because of their failure to "provide a substantive explanation" for and "simply assert[ing] in a conclusory fashion" their argument). Because McBride both failed to preserve her arguments below and failed to argue plain error here, her arguments have "come to the end of the road and [are] effectively waived." *Fish v. Kobach*, 840 F.3d 710, 729–30 (10th Cir. 2016).

Despite this general rule, if McBride had made a substantive effort to address the government's waiver argument and plead plain error in her reply, our caselaw does not mandate we stuff our fingers in our ears and hum loudly to drown out her attempts. *Leffler*, 942 F.3d at 1198. "[W]hen an error is obvious enough and satisfies Federal Rule of Criminal Procedure 52(b), we may exercise our discretion to recognize the error 'notwithstanding briefing deficiencies.'" *Id.* (quoting *United States v. Courtney*, 816 F.3d 681, 684 (10th Cir. 2016)); *see also MacKay*, 715 F.3d at 831 n.17. However, if an appellant raises a plain error argument for the first time in their reply brief, we will exercise our discretion "only if it 'permit[s] the appellee to be heard and the adversarial process to be served.'" *Isabella*, 918 F.3d at 845 (quoting *Zander*, 794 F.3d at 1232 n.5).

Here, asserting that one-fourth (if that) of the plain error standard has been met is "too general and conclusory to warrant review," and certainly does not allow "the adversarial process to be served." *Id.* at 845. Because of the paucity of McBride's briefs on the issue, we would not know where to begin if we wanted to analyze her argument under plain error and, frankly, that is not our role. *See Hill v. Kemp*, 478 F.3d 1236, 1251 (2007) (noting that "we exercise caution" when "undertak[ing] such self-directed research or pursu[ing] late and undeveloped arguments" as that "would run the risk of an improvident or ill-advised opinion, given our dependence as an Article III court on the adversarial process for sharpening the issues for decision" (quoting *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1278 (10th Cir. 1994))); *MacKay*, 715 F.3d at 831 n.17 ("[I]f an appellant fails to satisfy [the burden of plain error], we do not develop a plain error argument for the appellant.").

We have identified other instances when we will extend grace to a party before us, but none apply here.[13] McBride failed a basic responsibility of an appellant: arguing a standard of review. Her failure to do so after having failed to preserve her claims below waives them, even were we to find her arguments not otherwise barred.

### B. McBride waived her unpreserved challenges to Count V, and we dismiss her preserved claims for failing to follow appellate procedure.

_____

[13] For example, McBride's failure to argue plain error does not appear to be a "product of mistake." *Leffler*, 942 F.3d at 1198. She could have responded to the government's argument of waiver in her reply. She did not adequately do so. Further, the government neither "neglected to raise . . . [McBride's] failure to argue for plain error in [her] opening brief," nor is McBride "proceeding pro se on appeal." *Id.* at 1199.

We turn to McBride's argument that her conviction on Count V, false declaration to a court, should be vacated. McBride levels four challenges to the district court's jury instruction No. 36 that she argues requires us to vacate her conviction: (1) the instruction misstated the law, (2) the instruction improperly paraphrased McBride's alleged false statement, (3) the government failed to prove the falsity of McBride's statement, and (4) the government failed to prove the falsity of McBride's statement "under a reasonable interpretation of the law." Aplt. Br. at 14. The government responds that, once more, McBride has waived most of her arguments per invited error[14] and her failure to argue plain error in her briefs. Whatever the merits of McBride's arguments, we either find them waived or decline to address them. We therefore affirm McBride's conviction on Count V.

We need not, and will not, repeat the exhaustive law we have just outlined regarding an appellant's obligation to plead plain error for unpreserved claims. Suffice it to say that for McBride's second claim that the jury instruction inaccurately paraphrased her Declaration—an error she did not raise below—she is required to argue plain error on appeal. A failure to do so generally waives a litigant's argument. *See, e.g., Wright*, 848

---

[14] We do not reach the question of whether McBride committed invited error on Count V. The government argues that McBride now challenges an instruction she proposed in the parties' Joint Instruction No. 38. This is usually enough under our invited error doctrine. *See Sturm*, 673 F.3d at 1281. However, McBride challenged the instruction below during the jury instruction conference, and the record is unclear as to whether there was, in fact, ever a *joint* jury instruction for Count V. We need not navigate the invited error thicket because McBride failed to argue for a standard of review in her briefs, and that is sufficient grounds to affirm in the circumstances here.

F.3d at 1281; *Isabella*, 918 F.3d at 845; *United States v. De Vaughn*, 694 F.3d 1141, 1159 (10th Cir. 2012) (holding that because the defendant did "not even tr[y] to show how the alleged errors were 'plain,'" the court did not need to reach the merits). Here, again, McBride fails to satisfy her burden. Nowhere in her opening brief can we find McBride arguing for (or against) plain error or any other standard of review. This is enough to find her second claim waived. *See Kobach*, 840 F.3d at 729–30.

Again, we have been willing to entertain an appellant's plain error argument in their reply for unpreserved claims, even absent such an argument in their opening brief. *See generally Leffler*, 942 F.3d at 1197–99. McBride does not attempt to argue, and we are not convinced, that any of our circuit's loopholes offer her sanctuary. *See id.* (noting that our court may address an omitted plain error argument when that omission is a "product of mistake," the government fails to raise the omission in its briefs, or the defendant is proceeding pro se).

McBride's remaining Count V arguments were preserved, however. McBride moved to dismiss Count V as a matter of law via a Rule 29 motion, preserving her third and fourth claims, and objected to jury instruction No. 36 as misstating the law, preserving her first claim. It is an unsettled question whether we *must* dismiss when an appellant properly preserves their claim below yet fails to argue a standard of review in the appeals court. We have long protected our discretion to reach the merits of a claim despite briefing deficiencies. *MacArthur v. San Juan Cnty.*, 495 F.3d 1157, 1161 (10th Cir. 2007) ("[W]here an appellant has provided defective briefs, the court in its discretion

may scrutinize the merits of the case insofar as the record permits . . . ." (citing *Fryar v. Curtis*, 485 F.3d 179, 182 n.1 (1st Cir. 2007)). We have also found that "[i]t is indisputably within our power as a court to dismiss an appeal when the appellant has failed to abide by the rules of appellate procedure." *Id. See also Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1254 n. 2 (10th Cir. 2005) ("This failure to state contentions with particularity and to propose the appropriate standard of review is sufficient grounds, standing alone, to deny Ms. Praseuth's cross-appeal.").

Here, McBride's "omission of such a basic component of an appellate brief" as a standard of review—in both her opening and reply—is "inexcusable." *MacArthur*, 495 F.3d at 1161. The words "standard of review" appear nowhere in McBride's briefs. This is especially galling given McBride was put on notice by the government in its answer that it was advancing waiver arguments, precisely because of her failure to argue a standard of review. In the only attempt she makes to explain her omission, McBride dismissively posits that preservation below excuses arguing a standard of review before us. In a single paragraph of three sentences on the last page, McBride asserts that:

> Finally, the government argues that Appellants have not argued plain error. But all of these issues were wrapped up in the arguments made in support of Ms. McBride's motion for judgment as a matter of law on Count V and the arguments relating to the jury instructions on Count V. Thus, they were preserved for purposes of appeal.

Aplt. Reply at 11. McBride's statement is both incorrect and insufficient. Preserving an issue below is not the same as affirmatively pleading a standard of review on appeal; that a party preserved an error below does not empower them to then forgo whatever

procedural rules they deem inconvenient here. *Both* the preservation of an issue below *and* asserting the proper standard of review are required under the Federal Rules. *See* Fed. R. Crim. P. 51 (discussing preserving a claim of error); Fed. R. App. P. 28 (discussing the requirements of an appellant's brief). Neither Rule 51 nor Rule 28 mentions that satisfying one excuses the obligations of the other. The only possibly relevant rules from our own circuit do not offer any respite from these requirements. *See generally* 10th Cir. R. 28.1. And, if there were still any confusion on the matter, our caselaw indicates we view the two requirements as distinct. *See, e.g., Leffler*, 942 F.3d at 1196 ("When an appellant fails to preserve an issue *and also* fails to make a plain error argument on appeal . . . ." (emphasis added)).

Had McBride only failed to state a standard of review, we might be willing to reach the merits of her preserved claims. Unfortunately, that omission is only one among several other briefing deficiencies.[15] Moreover, even assuming we tried to reach the

---

[15] For example, McBride did not cite where in the record her Count V jury instruction claims were raised and ruled upon in her opening—despite this being required by our circuit rules. "[T]o avoid treating a claim as forfeited or waived, an appellant's opening brief must 'cite the precise references in the record where the issue was raised and ruled on' in the district court." *Leffler*, 942 F.3d at 1196 (citing 10th Cir. R. 28.1(A)). Indeed, our rules are *even more* demanding for jury instructions claims like McBride's. *See* 10th Cir. R. 28.1(B). McBride also did not cite to the record for her other Count V arguments in her opening. She did do so in her reply—but incorrectly. Aplt. Reply at 7. She claims she raised her Rule 29 motion between pages 1433–35 of the record. *Id.* In reality, she raised it several pages prior, and it was reserved by the district judge several pages later. Rec., vol. VIII at 1430, 1440. She nowhere tells us her Rule 29 motion's final disposition (or where to confirm it). To her credit, she does cite correct page numbers for her jury instruction challenge—but she does so in her reply, not her opening.

merits of her preserved Count V claims, we would be violating our own precedent to do so. To illustrate, for her preserved jury instruction claim, abuse of discretion was the appropriate standard for McBride to plead and prove.[16] *See Jereb*, 882 F.3d at 1335. She nowhere identifies or seeks to argue for this standard. To reach it, then, we would have to "pick out, argue for, and apply" that abuse of discretion standard all on our own initiative and without the benefit of the adversarial process. *Yuen*, 618 F.3d at 1189. This we are not prepared to do. As we have said, it is not our responsibility, nor our role, to craft an appellant's arguments for her. *See Yelloweagle*, 643 F.3d at 1284; *Woodward*, 199 F.3d at 1141 n.13; *Hill*, 478 F.3d at 1251. We decline to do so.

It is within our power to dismiss an appeal that fails to conform to the rules of appellate procedure, and we do so now. We affirm McBride's conviction on Count V.

## Conclusion

In sum, we hold McBride's challenges to her convictions on Counts I, II, and III waived under invited error or, alternatively, because of her failure to argue plain error on appeal. We hold her unpreserved arguments regarding her conviction on Count V waived

---

We have discretion to "independently review the record," *Leffler*, 942 F.3d at 1196, but we have spoken in stark terms to litigants who have failed to cite to it, and we have previously declined to address arguments not properly cited. *See Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533 n.3 (10th Cir. 1996); *United States v. Williamson*, 53 F.3d 1500, 1514 n.7 (10th Cir. 1995).

[16] We note that we review the district court's denial of McBride's motion for judgment of acquittal (her Rule 29 motion) *de novo*—a standard McBride nowhere argues for. *United States v. Islam*, 418 F.3d 1125, 1126 (10th Cir. 2005).

because of her failure to argue plain error, and her preserved claims dismissed for failure

to conform to the rules of appellate procedure. We affirm.

*USA v. McBride & Odyssey International*, Nos. 22-4119, 22-4122

**EID**, Circuit Judge, concurring in part and concurring in the judgment:

As the majority explains in Part A.2 and Part B, we could have resolved this case by holding simply that McBride waived her claims by failing to argue on appeal that the district court's decisions do not survive plain error (or any other standard of review). *See* Maj. Op. at 12–17 (Part A.2); 17–22 (Part B). If all that is true—which it is, in my view—then the majority's discussion of the invited-error doctrine and the supervening-decision exception is entirely unnecessary to resolve this case. *See id.* at 5–12 (Part A.1). In addition to being unnecessary in the first instance, the majority's discussion of the supervening-decision exception is unnecessarily broad, and in any event, wrong. The majority errs in concluding that the supervening-decision doctrine permits review of invited errors only if the appellant actually relied on a now-overruled case below. *See* Maj. Op. at 9–12. That conclusion is not required by our precedents and does not comport with the principles of waiver underlying the invited-error doctrine. Nevertheless, the majority is correct to conclude that McBride is not entitled to the benefits of the supervening-decision exception, even under a proper understanding of that rule, because she fails to argue that the law in our Circuit was well-established or that the law changed while her appeal was pending. Maj. Op. at 10–11. I therefore concur in the judgment.

I agree with the majority that McBride invited error by proposing the jury instructions she now challenges on appeal. *See* Maj. Op. at 5–8. Therefore, as the majority correctly explains, we may review these invited errors only if McBride is

entitled to the benefit of the supervening-decision exception. *See* Maj. Op. at 9. If this exception applies, we may review McBride's waived claims; otherwise, we may not.

The majority misstates the controlling rule in our Circuit for when the supervening-decision exception applies. We concluded in *United States v. Titties* that the supervening-decision exception is available "when a party relied on settled law that changed while the case was on appeal." 852 F.3d 1257, 1264 n.5 (10th Cir. 2017). The majority takes that conclusion and inserts a crucial word—"only." *See* Maj. Op. at 9 (citing *Titties*, 852 F.3d at 1264 n.5). Thus, according to the majority, "[w]hat is key for the supervening decision doctrine's applicability is that the law *upon which a party relied* below has changed." Maj. Op. at 9–10. The majority therefore concludes that McBride's failure below "to have relied on" Tenth Circuit "caselaw upholding [the right-to-control theory]" is fatal to her claim on appeal. Maj. Op. at 11.

The majority claims that *Titties* "articulates the reliance prong" it now imposes. *See* Maj. Op. at 10 n.7 (citing *Titties*, 852 F.3d at 1264 n.5). But *Titties* does not justify the majority's rule or its application here. In *Titties*, we summarized the appellant's arguments that "he did not invite error when he correctly informed the district court that [our precedent] required use of the modified categorical approach," and that "the invited-error doctrine does not apply when a party relied on settled law that changed when the case was on appeal." 852 F.3d at 1264 n.5. Of course, "[w]e agree[d]." *Id.* And then we went on to explain our ruling by citing our rule that "an intervening change in the law permits appellate review of an issue not raised below." *Id.* We never announced a so-called "reliance prong"—and in fact, other than summarizing the appellant's argument,

2

Footnote 5 of *Titties* did not mention "reliance" at all.  *Id.*;[1] *contra* Maj. Op. at 10 n.7.

Nor did we suggest that we were modifying or overruling prior precedent.[2]  *Titties* thus

identifies *one circumstance* under which the supervening-decision exception applies, but

---

[1] *See Titties*, 852 F.3d at 1264 n.5:

> We reject the Government's separate contention that we should not consider Mr. [Titties's] argument at all because he invited error.  *See United States v. DeBerry*, 430 F.3d 1294, 1302 (10th Cir. 2005) ("The invited-error doctrine prevents a party who induces an erroneous ruling from being able to have it set aside on appeal." (quotations omitted)).  The Government contends that Mr. [Titties] invited any error because he requested that the district court use the modified categorical approach.
>
> Mr. [Titties] responds he did not invite error when he correctly informed the district court that *Hood* required use of the modified categorical approach.  He argues the invited-error doctrine does not apply when a party relied on settled law that changed while the case was on appeal.
>
> We agree with Mr. [Titties]. We rejected a similar invited-error argument in *Ray v. Union Life Insurance Co.*, 314 F.3d 482, 486-87 (10th Cir. 2002).  In *Ray*, the parties had assumed in the district court that one legal standard applied, but the law changed after appellate briefing.  *Id.* at 486.  We said "an intervening change in the law permits appellate review of an issue not raised below."  *Id.* at 487; *see also Anixter v. Home-Stake Prod. Co.* 77 F.3d 1215, 1222 (10th Cir. 1996) ("Although this argument was not raised below, inasmuch as [a new Supreme Court case] was decided after appellant filed her notice of appeal, we may consider change in governing law arising during the pendency of the appeal."  We also find persuasive the Eleventh Circuit's refutation of the invited-error argument in *United States v. Jones*, 743 F.3d 826, 827-28 & n.1 (11th Cir. 2014) (rejecting government's invited error argument, addressing defendant's new argument based on intervening Supreme Court and circuit precedent, reviewing for plain error, and vacating defendant's ACCA sentence).

[2] Prior to *Titties*, we held that appellants may avail themselves of the supervening-decision doctrine even where the appellant did not apparently cite our well-settled case law below.  *See Ray*, 314 F.3d at 487; *Anixter*, 77 F.3d at 1231.  *Titties* cited both *Ray* and *Anixter*, and did not purport to limit or to overrule them.  *Titties*, 852 F.3d at 1264 n.5.

3

the majority construes *Titties* to describe the *only circumstance* under which it applies. The majority's conclusion is simply not required by *Titties*.

Nor is the majority's rule justified by the principles underlying invited error. The invited-error doctrine gives effect to the hornbook rule that "[a] party that has *forfeited* a right by failing to make a proper objection may obtain relief for plain error; but a party that has *waived* a right is *not* entitled to appellate relief." *United States v. Cornelius*, 696 F.3d 1307, 1319 (10th Cir. 2012) (quoting *United States v. Cruz–Rodriguez*, 570 F.3d 1179, 1183 (10th Cir. 2009)). We normally understand a mere failure to object to be a forfeiture. *Id.* at 1319–20. However, if a party affirmatively invites the district court to take a certain action—for instance, by proposing a jury instruction—we construe the party to have "knowingly and intelligently relinquished" any claim of error; that is, we deem such a claim waived. *Id.*

The supervening-decision rule is an exception to the invited-error doctrine. As we have explained, when the relevant issue was governed by "settled law" in our Circuit, but that law "changed while the case was on appeal," the "intervening change in the law permits appellate review," even if the appellant invited the district court to apply the law as it stood. *Titties*, 852 F.3d at 1264 n.5 (quoting *Ray*, 314 F.3d at 487). This rule "reflects the principle that it would be unfair, and even contrary to the efficient administration of justice, to expect a defendant to object at trial where existing law appears so clear as to foreclose any possibility of success." *Anixter*, 77 F.3d at 1231 (quoting *United States v. Washington*, 12 F.3d 1128, 1139 (D.C. Cir. 1994)).

Although it is an exception to the invited-error doctrine, the supervening-decision doctrine is not an exception to the underlying rule that "a party that has *waived* a right is *not* entitled to appellate relief." *Cornelius*, 696 F.3d at 1319. The supervening-decision exception is instead best understood as a limit on when we will infer waiver from an appellant's arguments below. Even if an appellant invited the district court to err, we will not presume that an appellant intentionally waived her claim if "the law was so well-settled at the time of trial that any attempt to challenge it would have appeared pointless." *Washington*, 12 F.3d at 1139. Instead, "where existing law appear[ed] so clear as to foreclose any possibility of success," we can draw no inference from an appellant's failure to object. *Anixter*, 77 F.3d at 1231 (quoting *Washington*, 12 F.3d at 1139); *cf. Cornelius*, 696 F.3d at 1319–20. In other words, a party who "invites error" by proposing instructions required by the well-settled law of our Circuit does not intentionally relinquish her right to challenge such instructions if the law changes. Indeed, we have previously held that, under such circumstances, a failure to object does not even evidence a forfeiture requiring plain-error review. *See Anixter*, 77 F.3d at 1231 (rejecting the application of the "plain error standard to litigants whose claimed error was based on a change in the law that arose after trial").

In my view, this is true even if the appellant did not explicitly cite a previously well-settled decision below. *Contra* Maj. Op. at 9–12. The majority deems reliance below "key for the supervening decision doctrine's applicability." *Id.* However, I do not take the majority to say that the supervening-decision doctrine is a freewheeling *exception* to the waiver doctrine, rather than a mere *application* of it. And there is no

5

reason to think that the failure below to cite a now-overruled decision is conclusive evidence of waiver. A litigant who capitulates to the well-settled law of our Circuit does not necessarily do so willingly, and I would not adopt a conclusive presumption to that effect.

Nor should this Court adopt a reliance requirement that would require us to examine litigants' subjective states of mind below. What about an appellant who proffered only the pattern instruction below? Must the appellant say in her opening brief that she submitted such instruction in reliance on our previous cases? Must we take the appellant's word for it? Or may we require the appellant's trial counsel to submit a sworn declaration that she knew of our prior cases and submitted the pattern instruction only because our prior cases required it? I doubt my colleagues would condone this approach. That is why, although waiver speaks to subjective intent, we typically employ certain presumptions to objectivize our inquiry on appeal. Where an appellant invited an error below, we have adopted the presumption that the appellant's claim of error was waived. Where well-settled law changed on appeal, we have adopted the presumption that the appellant did not intend to waive her claim. I would not go further to adopt a subjective inquiry into whether the appellant was aware of our well-settled law or relied on it below.

Therefore, to receive the benefit of the supervening-decision exception under our controlling precedents, McBride must demonstrate (1) that the law of the Tenth Circuit was previously so well-settled it foreclosed any possibility of success; and (2) that the relevant law in this Circuit was changed by an intervening Supreme Court or Tenth

6

Circuit decision. As the majority explains, McBride fails to demonstrate either of these things on appeal. *See* Maj. Op. at 10–11. Therefore, she is not entitled to the benefits of the supervening-decision exception, and our review of her claims is barred.

The majority apparently agrees with this reasoning. *See* Maj. Op. at 10–11. This is yet another reason the majority's erroneous discussion of reliance is entirely unnecessary to dispose of this appeal. McBride did not argue on appeal that the law in this Circuit was settled, so even under the majority's rule, it is irrelevant whether she "relied on" such law below. There was no reason for the majority to announce additional requirements for the supervening-decision exception when those requirements would not make a difference in this case.

McBride invited error; she did not show that previously well-settled law in our Circuit changed on appeal; and she waived her claims with respect to Count V.[3] I therefore agree with the majority that we must affirm. However, I disagree with the majority's choice to resolve McBride's appeal through an unnecessary and incorrect restatement of our invited-error doctrine in a published opinion. Therefore, I respectfully concur in the judgment.

---

[3] I join in Part B, which affirms McBride's conviction on Count V, because that section is not dependent upon the invited-error doctrine. Maj. Op. at 18 n.13.

7