**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**February 5, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DAKOTA DON BRISCOE, a/k/a Outlaw,

    Defendant - Appellant.

No. 25-2017
(D.C. No. 1:20-CR-01777-MV-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS** and **McHUGH**, Circuit Judges, and **VRATIL**, District Judge.[**]
_____

On September 7, 2020, Defendant-Appellant Dakota Don Briscoe allegedly

shot and killed two men inside a car and then set the car on fire. He fled the scene on

foot, running from house to house in search of a getaway car. After two unsuccessful

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[**] The Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by designation.

carjacking attempts, he successfully carjacked a third individual. He was eventually arrested and indicted on multiple counts related to the events of September 7, 2020.

After a three-day trial, a federal jury convicted Mr. Briscoe of one count of carjacking in violation of 18 U.S.C. § 2119(1), two counts of attempted carjacking in violation of 18 U.S.C. § 2119(1), and one count of using and carrying a firearm, and discharging said firearm, during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii).

On appeal, Mr. Briscoe argues that the district court abused its discretion by admitting evidence related to the double homicide. He contends that the court erroneously concluded the evidence was *res gestae* and that, in any case, the court should have excluded the evidence under Federal Rule of Evidence 403. Next, he argues that the district court's admission of the double-homicide evidence deprived Mr. Briscoe of a fair trial in violation of the Due Process Clause of the United States Constitution. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.     BACKGROUND

### A.     *The September 7 Events*[1]

On the morning of September 7, 2020, Mr. Briscoe was riding in a 2013 Chevy Equinox with two other individuals. The vehicle came to a sudden stop at the end of Rincon Road in Albuquerque, New Mexico. According to the Government,

---

[1] On appeal from a criminal conviction, "[w]e recount the facts in the light most favorable to the government." *United States v. Pursley*, 577 F.3d 1204, 1210 n.2 (10th Cir. 2009).

Mr. Briscoe shot the other two individuals in the car, killing them. He then set the vehicle on fire and fled the scene on foot.[2]

Mr. Briscoe ran first to a house on Rincon Road where his girlfriend's brother, F.C.,[3] lived. Mr. Briscoe told F.C. he needed help and that someone was trying to kill him. After about three minutes, Mr. Briscoe left on foot.

He next approached a nearby residence where a woman, R.P., had just backed into the driveway and was sitting in her car. The residence belonged to R.P.'s father. R.P. saw Mr. Briscoe standing in the yard and immediately locked her car doors. Mr. Briscoe approached her car and tried to open the passenger-side door while telling her to get out of the vehicle. Finding the door locked, he went around to the driver's side and began tapping on the window. Mr. Briscoe told R.P. to get out and give him the car. At this point, R.P. was "very scared" because she saw that he had something in his pocket. ROA at 227. She started "honking and screaming," trying to get the attention of her father, who was inside the house. *Id.* R.P. then put her car in drive, and Mr. Briscoe started walking away. Thinking he was leaving, she put her car back in park. Mr. Briscoe then turned around, pulled a gun and pointed it at her. In response, R.P. put the car back in drive, "floored it out of the [driveway]," and took off down the road. *Id.* at 230–31.

---

[2] As a result of these events, Mr. Briscoe has been charged with two counts of first-degree murder and one count of aggravated arson in New Mexico state court. That case remains pending.

[3] We refer to the victims and witnesses by their initials.

Mr. Briscoe then ran to a house around the corner, where he encountered E.L. E.L. was cleaning her front yard when Mr. Briscoe came "running up, kind of panicked, asking for help." *Id.* at 157. Mr. Briscoe told E.L. he was going to take her truck and reached into it through the open driver's side door. When E.L. told him to stop, Mr. Briscoe pointed a gun at her chest. E.L. ran into her house through the back door and called the police.

Unable to commandeer E.L.'s truck without the keys, Mr. Briscoe next went across the street and forcibly entered a house. S.C. and her teenage niece, A.C., were sleeping in the house and were awakened by two loud bangs. They opened the bedroom door and saw Mr. Briscoe standing in the entryway holding car keys to S.C.'s 2008 Dodge Avenger, her Nissan Titan truck, and her brother's 2008 Mustang. S.C. asked, "What the hell are you doing in my house?" *Id.* at 178. Mr. Briscoe pulled out a gun and told S.C. and A.C. to step back. S.C. froze, but A.C. lunged at him. Mr. Briscoe pointed the gun toward the ceiling and fired a shot, causing S.C. and A.C. to run back into the bedroom. Mr. Briscoe left the house and drove away in S.C.'s 2008 Dodge Avenger.

Meanwhile, R.P.'s father had learned that R.P. was nearly carjacked. He began driving around the neighborhood with his gun, looking for Mr. Briscoe. Neighbors pointed out Mr. Briscoe, who was driving away in S.C.'s Dodge Avenger, and R.P.'s father followed him. Realizing he was being followed, Mr. Briscoe stopped the car and fired three shots at R.P.'s father, who returned fire. Mr. Briscoe got back in his car and sped away. He was arrested nine days later near Las Cruces, New Mexico.

4

### B. *The Indictment and Preliminary Motions*

A federal grand jury returned a nine-count indictment against Mr. Briscoe. The indictment charged him with two counts of carjacking in violation of 18 U.S.C. § 2119(1) (Counts One and Six); two counts of using and carrying a firearm during and in relation to a crime of violence, and discharging said firearm, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Counts Two and Seven); one count of possession with intent to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count Three); two counts of attempted carjacking in violation of 18 U.S.C. § 2119(1) (Counts Four and Five); and two counts of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924 (Counts Eight and Nine).

Counts Four through Nine stemmed from the events that occurred on September 7, 2020, as detailed above, while Counts One through Three stemmed from a separate series of events that occurred on August 28, 2020.

Mr. Briscoe moved to sever the counts into four separate trials: one trial for Counts Four through Seven (the "September 7 counts"), one trial for Counts One through Three (the "August 28 counts"), and one trial for each of the felon in possession of a firearm counts.[4] Relevant here, Mr. Briscoe argued that it was

---

[4] Mr. Briscoe's motion to sever was filed before the Second Superseding Indictment and therefore referenced the count numbers from the original eleven-count indictment. Because the substance of the motion to sever was unaffected by the amended indictment, the district court referenced the counts as they appeared in the nine-count Second Superseding Indictment. We do the same here.

prejudicial to join the September 7 counts with the August 28 counts because of "the strength of the evidence of the series of events on September 7th." Supp. ROA Vol. 2 at 13. He explained that "the [G]overnment will likely argue that evidence of the alleged double homicide and arson is admissible" to prove the September 7 counts, and it would be "difficult, if not downright impossible," to prevent this evidence "from tainting the [jury's] consideration of the events on August 28th." *Id.* at 13–14.

The district court granted Mr. Briscoe's motion to sever. It noted that severance of the August 28 counts and the September 7 counts was warranted because the double-homicide evidence "would be admissible—with respect to the September 7, 2020 offenses *only*—to prove motive or . . . common scheme or plan," but the same evidence "would be *inadmissible* with respect to the August 28, 2020 charges." Supp. ROA Vol. 1 at 56. The court ruled that the trial on the September 7 counts would be held first.

Before trial, the Government filed a motion in limine to introduce evidence of the double homicide as either *res gestae* or under Federal Rule of Evidence 404(b). It argued that the double-homicide evidence was *res gestae* because it "complete[d] the story underlying the triple carjackings" and was thus "inextricably intertwined with the events of September 7." ROA Vol. 1 at 63. It claimed that the evidence was also admissible under Rule 404(b) to show that Mr. Briscoe "had a strong motive" for the charged crimes. *Id.* at 64.

Mr. Briscoe opposed the motion and asked the court to exclude all evidence about the homicides, including evidence of the "dead bodies; casings found in the

6

burned Chevy Equinox; projectiles pulled from the decedents; . . . conclusions about manner or cause of death; . . . and testimony about the burning car." *Id.* at 217–18. He argued that the evidence was not *res gestae* because the double murder and arson "were not committed as part of a larger scheme, design, or plan that was tied in any way to the carjackings charged in this case." *Id.* at 222. He also contended that the evidence was not admissible under Rule 404(b) because it was "not probative of motive or state of mind in a propensity-free way." *Id.* at 226. And he maintained that the evidence should be excluded under Rule 403 because "any limited probative value of the proffered homicide and arson evidence is substantially outweighed by the danger of unfair prejudice." *Id.* at 227.

In a written memorandum opinion and order, the district court granted the Government's motion in limine. It concluded that the double-homicide evidence was admissible as *res gestae* because "the double-homicide is essential background information that is directly connected to the factual circumstances of the crime." *Id.* at 544–45 (internal quotation marks omitted). It further noted that its "severance order was predicated on the assumption that the evidence of the double-homicide would be admissible in a trial for [the September 7 counts]." *Id.* at 544.

The court also ruled, however, that the scope of the double-homicide evidence "must be limited pursuant to Rule 403 to prevent both confusion of the issues and unfair prejudice." *Id.* at 545. Because Mr. Briscoe was not on trial for double homicide, the court ruled that "the introduction of evidence of the double-homicide must be limited in accordance with its narrow purpose, namely, to show

Mr. Briscoe's motive for the carjackings." *Id.* To that end, the court stated that it would permit the Government to introduce evidence that "Mr. Briscoe got into a vehicle with two other men who were alive, that Mr. Briscoe [wa]s later captured on surveillance footage leaving the vehicle, which at that point was on fire, and that firefighters discovered two dead bodies inside the vehicle, both of which had sustained gunshot wounds." *Id.* at 545–46. But the court granted Mr. Briscoe's request to exclude a photo showing two burned bodies in the burnt vehicle, reasoning that "the photograph [wa]s unduly and 'designedly inflammatory' as its only apparent purpose [wa]s to evoke a strong emotional response in the jury." *Id.* at 548–49.

The court also noted that the Government had agreed to limit the scope of its evidence and would not seek to introduce evidence regarding the motive of the double homicide, evidence that the arson was intentional, evidence that the victims were shot in the head, photographs from the autopsies, photographs of the victims when they were alive, recordings of the 911 calls from the victims' family members, and the FBI's "wanted" poster showing Mr. Briscoe.

### C.    Trial

The trial for the September 7 counts commenced on December 4, 2023. Before jury selection, defense counsel again objected to the introduction of any double-homicide evidence. The court reiterated that its ruling "specifically limited the amount of evidence that the Government could introduce with regard to the double-homicide" and urged both parties to review the order and comply with its parameters. ROA Vol. 14 at 13.

8

In its opening statement, the Government summarized the double-homicide evidence it planned to introduce. It told the jury that Mr. Briscoe was seen leaving the Chevy Equinox and that the car subsequently "[caught] fire and eventually explode[d]." ROA Vol. 13 at 26. It added that first responders "discover[ed] two dead bodies inside of that burned vehicle" with "five gunshot wounds" between the two of them. *Id*. at 26–27.

The Government's first witness, L.A., testified that he was working on a neighbor's roof on the morning of September 7 when he saw the Equinox screech down the road and come to a stop at a dead end. He saw a man get out of the vehicle, and shortly after that he saw smoke and flames coming out of the car. L.A. got down from the roof and approached the vehicle while on the phone with the police. As he got close to the vehicle, he saw what looked like "a mannequin's hand" in flames. *Id.* at 37. During L.A.'s testimony, the Government played a surveillance video depicting the scene and a recording of L.A.'s 911 call.

Before calling its next witness, Albuquerque Police Department ("APD") Detective Leah Wise, the Government informed the court that it was planning to ask Detective Wise several questions about the autopsy of the homicide victims, which Detective Wise attended. Counsel explained that it was "going to elicit that, at the autopsy, she observed five gunshot wounds." *Id.* at 63. It assured the court that the testimony would not refer to the location of the wounds or "be graphic at all." *Id.* Defense counsel objected to any mention of the autopsy, but the court overruled the objection. It explained,

9

> I think the Government is being very careful [to be] consistent with my order in limine. I don't want the jurors to think that these individuals were burned to death, and . . . . I also don't want them wondering how on earth a law enforcement officer would know that there were five wounds. And so, obviously, the way that this officer knew that there were five wounds is because she was present during the autopsy. . . . I believe that it is being very carefully presented so as to limit any undue prejudice by describing the location of the gunshot wounds in the decedents' heads.

*Id.* at 67. Consistent with the court's ruling, Detective Wise testified that she observed "five gunshot wounds between the two victims" at the autopsy and that the autopsy revealed that the victims were not alive when the car was burned. *Id.* at 95.

APD Officer Andrew Hsu also testified for the Government. Officer Hsu was the CSI detective who responded to the call about the burning Equinox on September 7, 2020. He testified that when he arrived on the scene, the fire had been extinguished and there was "substantial fire damage" to the Equinox. *Id.* at 295. He also testified that he observed the bodies of the two victims found dead inside the vehicle.

In its closing argument, the Government stated, "On September 7th of 2020, Mr. Briscoe was scared . . .[,] panicked, and he wanted to get away. He needed a getaway car." *Id.* at 545. It argued that Mr. Briscoe had a "desperate need to escape" the scene with a burning car "where there are not one but there are two dead bodies inside. Two dead bodies with five gunshot wounds." *Id.* at 546.

The jury found Mr. Briscoe guilty on all four counts, and the district court sentenced him to twenty-five years' imprisonment. The district court granted the

Government's motion to dismiss the remaining counts of the operative indictment.

Mr. Briscoe timely appealed.

## II.    DISCUSSION

Mr. Briscoe first argues that the district court reversibly erred by allowing the

Government to introduce any evidence related to the double homicide in his trial on

the September 7 counts. Next, he argues that the admission of the double-homicide

evidence resulted in a fundamentally unfair trial in violation of the Due Process

Clause of the United States Constitution. We consider each of his arguments in turn.

### A.    *Admissibility of the Double-Homicide Evidence*

"We review a district court's decisions on the admission or exclusion of

evidence . . . for abuse of discretion." *Vincent v. Nelson*, 51 F.4th 1200, 1212–13

(10th Cir. 2022) (quotation marks omitted). "An abuse of discretion occurs when the

district court renders an arbitrary, capricious, whimsical, or manifestly unreasonable

judgment. Under this standard, we will not reverse the district court without a

definite and firm conviction that the lower court made a clear error of judgment or

exceeded the bounds of permissible choice in the circumstances." *United States v.*

*Joseph*, 108 F.4th 1273, 1281 (10th Cir. 2024) (internal quotation marks omitted).

### 1.    *Res Gestae*

Mr. Briscoe contends that the district court abused its discretion in admitting

the double-homicide evidence as *res gestae*. "An uncharged act is admissible as

*res gestae*—intrinsic evidence not subject to Federal Rule of Evidence 404(b)—if it

was inextricably intertwined with the charged crime such that a witness's testimony

would have been confusing and incomplete without mention of the prior act." *United States v. Ford*, 613 F.3d 1263, 1267 (10th Cir. 2010) (internal quotation marks omitted). Other act evidence is intrinsic if it "is directly connected to the factual circumstances of the crime and provides contextual or background information to the jury." *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011) (internal quotation marks omitted). In contrast, extrinsic evidence is "extraneous and is not intimately connected or blended with the factual circumstances of the charged offense." *Id.* (quotation marks omitted).

Mr. Briscoe contends that the double-homicide evidence was not properly admissible as *res gestae* because the evidence "did not speak to a single element of a single charge at issue," Appellant's Br. at 19, and was "not necessary" to establish the charged crimes. Reply Br. at 5 (emphasis omitted). But it is well established that evidence need not "establish an element of the charged offense" to be intrinsic. *Irving*, 665 F.3d at 1212. And Mr. Briscoe makes no meaningful attempt to argue that the double-homicide evidence is not "directly connected to the factual circumstances" of the carjackings, *see id.*, nor does he dispute that the evidence provides "context" and "complete[s] the story" of the carjackings. *See United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995).

Moreover, the record supports the district court's determination that the double-homicide evidence was admissible as *res gestae*. The double homicide immediately preceded the charged carjackings, occurred in the same vicinity, and supplied the motive for the charged conduct. The double-homicide evidence

explained why Mr. Briscoe urgently needed a getaway car and was willing to cause serious bodily harm or death to obtain one. Without that context, the jury would have been left with a fragmented and potentially confusing account of the events of September 7, 2020. In other words, the double-homicide evidence was "entirely germane background information, which [wa]s directly connected to the factual circumstances of the crime, and thus [wa]s intrinsic to the crime at issue." *See Irving*, 665 F.3d at 1213 (internal quotation marks omitted).

Accordingly, Mr. Briscoe has not met his burden of showing that the district court's admission of the double-homicide evidence as *res gestae* was an "arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *See Joseph*, 108 F.4th at 1281. We therefore conclude that the district court did not abuse its discretion in admitting the double-homicide evidence.[5]

## 2.    Rule 403

Mr. Briscoe next contends that, even if the double-homicide evidence was properly admitted as *res gestae*, the district court abused its discretion in declining to exclude the double-homicide evidence under Rule 403.

---

[5] Because we conclude that the district court did not err in admitting the double-homicide evidence as *res gestae*, we do not address whether the evidence would be independently admissible under Federal Rule of Evidence 404(b). Rule 404(b) "only applies to evidence of acts extrinsic to the charged crime." *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011) (quotation marks omitted). If evidence of another act "is intrinsic to the charged crime, then Rule 404(b) is not even applicable." *Id.*

Intrinsic evidence may be excluded under Rule 403. *Irving*, 665 F.3d at 1213.

Rule 403 provides that a trial court "may exclude relevant evidence if its probative

value is substantially outweighed by a danger of one or more of the following: unfair

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Evidence is not

unfairly prejudicial simply because it is damaging to an opponent's case." *United

States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (quotation marks omitted).

"[T]o be *unfairly* prejudicial, the evidence must have 'an undue tendency to suggest

decision on an improper basis, commonly, though not necessarily, an emotional

one.'" *Id.* (quoting Fed. R. Evid. 403 advisory committee's note). In other words,

"[e]vidence is unfairly prejudicial if it makes a conviction more likely because it

provokes an emotional response in the jury or otherwise tends to affect adversely the

jury's attitude toward the defendant wholly apart from its judgment as to his guilt or

innocence of the crime charged." *United States v. Rodriguez*, 192 F.3d 946, 951

(10th Cir. 1999) (quotation marks omitted).

"[B]ecause district court judges have front-row seats during trial and extensive

experience ruling on evidentiary issues," we "give district courts considerable

discretion in performing the Rule 403 balancing test." *United States v. Tenorio*,

809 F.3d 1126, 1130 (10th Cir. 2015) (internal quotation marks omitted); *see also

Irving*, 665 F.3d at 1214 ("The trial court has broad discretion to determine whether

prejudice inherent in otherwise relevant evidence outweighs its probative value."

(quotation marks omitted)). But "exclusion of evidence under [Rule 403] is an

14

extraordinary remedy that should be used sparingly." *United States v. Butler*, 141 F.4th 1136, 1145 (10th Cir. 2025) (internal quotation marks omitted). Thus, "when conducting Rule 403 balancing, courts must give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Id.* at 1146 (internal quotation marks omitted). And "[e]ven if this type of prejudice is found, it must *substantially* outweigh the probative value of the evidence in order to be excluded under Rule 403." *United States v. Tan*, 254 F.3d 1204, 1212 (10th Cir. 2001).

Mr. Briscoe asserts that it was an abuse of discretion for the district court to fail to exclude the double-homicide evidence under Rule 403. He argues that the probative value of the evidence was low, describing it as "truly tangential." Appellant's Br. at 20. He also argues that the evidence was highly prejudicial, pointing to testimony from Mr. Briscoe's sentencing hearing in which counsel for the Government described the emotional impact of L.A.'s testimony.[6] Although Mr. Briscoe concedes that the court limited the scope of the evidence to prevent confusion of the issues and unfair prejudice, he contends that the court admitted "far too much detail" about the double homicide and that the court's "minor sanitization of some details was insufficient to cure the error." *Id.*

---

[6] Specifically, Detective Wise testified during sentencing that what "sticks out to [her] the most when [she] think[s] about this case" was L.A.'s statement that he thought he saw a "mannequin inside of th[e] burning car," which turned out to be "two human beings." ROA Vol. 13 at 673–74. She also testified that L.A. was sobbing in her office when he gave his account of finding the bodies.

Mr. Briscoe has not persuaded us that the district court acted outside its considerable discretion by admitting limited evidence of the double homicide under Rule 403. Given the close temporal relationship between the double homicide and the charged carjackings, the double-homicide evidence had significant probative value in explaining why Mr. Briscoe needed a car and was willing to hurt or kill someone to obtain one. Indeed, Mr. Briscoe even concedes that the evidence "provide[s] a partial explanation for why Mr. Briscoe was in the panicked state on September 7, 2020." *Id.*

To be sure, the double-homicide evidence also carried a risk of unfair prejudice to Mr. Briscoe. But the record reveals that the district court carefully considered that risk and took concrete steps to mitigate it. The court granted Mr. Briscoe's request to sever the counts into four separate trials, excluded evidence depicting the burned corpses of the victims, and excluded testimony that the victims were shot in the back of the head. Indeed, Mr. Briscoe fails to point to any evidence admitted at trial that was unduly graphic, inflammatory, or emotionally charged. Instead, he relies solely on the prosecutor's statements at Mr. Briscoe's sentencing hearing, which are irrelevant to his Rule 403 challenge. *See United States v. Ruby*, 706 F.3d 1221, 1227 (10th Cir. 2013) ("Unlike at a criminal trial where the Federal Rules of Evidence limit the types of admissible evidence, at a sentencing hearing the court can have access to any relevant information, as long as it adheres to a preponderance of the evidence standard.").

The district court further mitigated the risk of unfair prejudice by providing a limiting instruction. It specifically instructed the jury to "consider the evidence of the

double homicide and arson that are alleged to have occurred on September 7th, 2020, only as it bears on [Mr. Briscoe's] motive to commit the charged offenses and for no other purpose." ROA Vol. 13 at 534. It explained to the jury, "You are here to decide whether the Government has proved beyond a reasonable doubt that the Defendant is guilty of the crimes charged. The Defendant is not on trial for any act, conduct, or crime not charged in the Indictment." *Id.* Such an instruction "counter-balanced the possible negative effects of admission," further undermining Mr. Briscoe's contention that the district court reversibly erred in applying Rule 403. *See Irving*, 665 F.3d at 1214.

Accordingly, the district court did not abuse its discretion by declining to exclude all double-homicide evidence under Rule 403.

### B.    *Due Process Violation*

Mr. Briscoe next argues that even if the double-homicide evidence was admissible under the Federal Rules of Evidence, its admission affected the fundamental fairness of the trial such that Mr. Briscoe's due process rights were violated. However, his challenge fails because he has not adequately briefed his argument.

Mr. Briscoe concedes that he did not raise his constitutional claim before the district court. Accordingly, his argument is reviewable only for plain error. *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019). But, despite correctly identifying the standard of review and the elements required to show plain error, Mr. Briscoe does not "attempt[] to run the gauntlet created by our rigorous plain-

17

error standard of review." *See United States v. Isabella*, 918 F.3d 816, 845 (10th Cir. 2019) (internal quotation marks omitted). He does not apply the plain-error test by explaining how the elements are satisfied with respect to the district court's admission of the double-homicide evidence. Instead, he simply reiterates his argument that the evidence was inflammatory and asserts that it "would have tended to override the emotions of the Jurors to such a degree that it was impossible for Mr. Briscoe to receive a fair trial on the issues actually in contention." Appellant's Br. at 27.

"When an appellant fails to preserve an issue and also fails to make a plain-error argument on appeal, we ordinarily deem the issue waived (rather than merely forfeited) and decline to review the issue at all—for plain error or otherwise." *United States v. McBride*, 94 F.4th 1036, 1044 (10th Cir. 2024) (quotation marks omitted). "[A]sserting that one-fourth (if that) of the plain error standard has been met is too general and conclusory to warrant review, and certainly does not allow the adversarial process to be served." *Id.* at 1046 (internal quotation marks omitted). And although this court applies the plain-error standard somewhat "less rigidly" when reviewing a constitutional challenge, *United States v. Johnson*, 414 F.3d 1260, 1263 (10th Cir. 2005), that does not relieve Mr. Briscoe of his burden to show that he is entitled to relief.

Because Mr. Briscoe inadequately argued for plain error before this court, "h[is] arguments have come to the end of the road and are effectively waived." *See McBride*, 94 F.4th at 1045 (internal quotation marks omitted); *see also United States*

18

*v. MacKay*, 715 F.3d 807, 831 n.17 (10th Cir. 2013) ("[A]n appellant carries the heavy burden of satisfying plain error. And if an appellant fails to satisfy that burden, we do not develop a plain error argument for the appellant." (internal citation omitted)). We therefore decline to consider his argument that the admission of the double-homicide evidence violated his constitutional rights.

### III.    CONCLUSION

Based on the forgoing analysis, we AFFIRM in full the district court.

Entered for the Court

Carolyn B. McHugh
Circuit Judge